## Carey, Appellant, v. Carey.

Argued November 11, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Walter A. Kendall,* of *Smith & Kendall,* with him *Charles F. Greevy,* for appellant.

*Michael J. Maggio,* for appellee, was not heard.

OPINION BY KELLER, P. J., February 28, 1936:

On February 20, 1928 the appellant, John Carey, secured a decree of divorce from his wife, Florence M. Carey, in the Court of Common Pleas of Lycoming County, Pennsylvania, on the ground of wilful and malicious desertion. In his libel, sworn to on May 14, 1927, he averred that they were married on September 8, 1914, in Rochester, N. Y., and lived in that State until on or about April 15, 1921, when she deserted him; that he had resided in the City of Williamsport since March 2, 1926,—being then at 770 West Fourth Street —and that his wife's last known place of residence, when she deserted him, had been at 20 Fifth Avenue, New York City. Personal service on the respondent was not obtained, and publication was made, as directed by the court, in the Jersey Shore Herald, a daily newspaper published in Lycoming County. The respondent did not appear to the action either in person or by attorney.

On September 9, 1933, the said Florence M. Carey

filed her petition in the said court reciting the matters above set forth in the libel and averring that they were false and fraudulent; that her husband never had a legal residence at 770 West Fourth Street, Williamsport, or any other place in Pennsylvania; that he did not reside there on March 2, 1926 or for one whole year preceding the filing of his libel in divorce; that she, the petitioner, never resided at 20 Fifth Avenue, New York City; that she had not deserted her husband on April 15, 1921 or any other time; that the testimony of her husband and his corroborating witnesses in the divorce case that he was a traveling salesman was false; that he was an official of a transportation company, with office in the City of Buffalo, New York, whose duties required his daily presence in Buffalo; that she never had any notice of said divorce proceedings; that the libellant knew her address and communicated with her both before and during the divorce proceedings, but gave her no notice of their pendency; that he had been in communication with her parents and obtained assistance from them, and knew that she communicated constantly with her parents, but told them nothing of the divorce proceedings; that libellant never left the City of Buffalo and that he had declared a 'fake' residence in Williamsport, Pennsylvania, in order to obtain a divorce. She obtained a rule to show cause why the decree in divorce so obtained should not be set aside and declared null and void and of no effect. This rule together with a copy of the petition was served personally, on the said John Carey at No. 533 Amherst Avenue, Buffalo, New York, on September 23, 1933, by Louis L. Bucciarelli, an attorney-at-law, by delivering to and leaving with him verified copies of the same. On October 18, 1933, Frank P. Cummings, Esq., who had acted as master in the divorce proceedings, appeared specially in said court for the said John Carey, "for the purpose only of moving and contending for the dis-

charge of the rule to show cause issued September 9, 1933," and on November 15, 1933, John Carey by Charles F. Greevy, attorney specially appearing, filed a motion to quash the proceedings and discharge the rule aforesaid, on the ground that the said court had acquired no jurisdiction over him for the reason that the service of the same in the manner aforesaid was illegal and null and void, (1) because such personal service could not legally be made outside the State of Pennsylvania, (2) because it was made by Louis L. Bucciarelli, who had not been legally deputized and (3) because it was not made by the sheriff of Lycoming County, or any one deputized by him or by authority of court to make such service. Argument was had on this motion on May 28, 1934 and on August 29, 1934 the motion was discharged and John Carey, the respondent in said rule was ordered to appear generally and answer within fifteen days. On September 11, 1934 Smith and Kendall of Buffalo, New York, and Charles F. Greevy, of Williamsport, appeared specially for John Carey, respondent in said rule, for the purpose only of filing exceptions to the court's opinion, order, conclusion and decree on his motion to quash the rule granted on petition of Florence M. Carey to show cause why said decree of divorce should not be set aside and declared null and void, and in the event said exceptions be overruled to take and prosecute an appeal from said order.

Subsequently, on September 22, 1934 a petition was filed praying the court to vacate its order of August 29, 1934, in order that the said John Carey, by attorney, specially appearing for him as aforesaid, might proceed to raise the question of jurisdiction in strict conformity with the Act of March 5, 1925, P. L. 23. The court, believing it to be for the best interests of all parties that the question of jurisdiction be raised and decided preliminarily, granted the motion and vacated the order of August 29, 1934. Subsequently on October 4, 1934

256

the court discharged the rule to quash, for want of jurisdiction, the proceedings taken by said Florence M. Carey, and ordered John Carey to appear generally and answer the rule within fifteen days. Exceptions to said order were filed October 9, 1934 and dismissed October 11, 1934. John Carey appealed to this court within fifteen days. The appeal will be dismissed.

The petition to quash the proceedings begun by Florence M. Carey, because of alleged illegal service of the rule on John Carey, in Buffalo, New York, raises only the question of jurisdiction and hence for the purposes of this appeal the averments in her petition must be accepted as true.

This being so we have, for present purposes, a clear case of extrinsic fraud committed on the court by John Carey, the libellant in the divorce action, which the court, unquestionably, under our decisions has the power and duty to rectify: Boyd's App., 38 Pa. 241; Allen v. Maclellan, 12 Pa. 328; Fleming v. Fleming, 83 Pa. Superior Ct. 554; Willetts v. Willetts, 96 Pa. Superior Ct. 198. By extrinsic fraud is meant some act or conduct of the prevailing party which has prevented a fair submission of the controversy: Willetts v. Willetts, 96 Pa. Superior Ct. 198, 204. Differing from intrinsic fraud, or perjury at the trial, upon a question contested in court by the parties, facts establishing extrinsic fraud, such as, that the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff, are ground for setting aside and annulling the judgment thus fraudulently obtained (United States v. Throckmorton, 98 U. S. 61, 66) for in such case "the other party had no knowledge of the suit and was not represented on the trial, and there has, therefore, never been a real contest in the hearing of the case": Fleming v. Fleming, supra, p. 556. As pointed out by our Brother BALDRIGE, in Willetts v. Willetts, supra, p. 205, perjured testimony, given in a

case where the jurisdiction of the court has been imposed upon, is also considered extrinsic fraud.

The question before us may be stated to be, was actual notice of the rule to vacate the decree, which was given to John Carey, in person, sufficient service or notice of the proceedings, to give the court jurisdiction to dispose of the rule?

At the outset it must be remembered that under our long established Pennsylvania practice it was not necessary to bring a separate suit to invalidate the decree. It could be done by a rule to show cause issued in the action begun by this appellant. The rule issued on the petition of Mrs. Carey was not a new suit or original process, but ancillary or auxiliary to the action instituted in that court by this appellant. The late Chief Justice MITCHELL, in his address on Motions and Rules at Common Law, delivered when a judge of the Court of Common Pleas No. 2 of Philadelphia County, said: "Before a court can grant or enforce a rule against any party it must have acquired jurisdiction over him by some regular or recognized legal process. The party must be in court within the contemplation of the law, either actually, as *party* ...... or constructively, as an officer of the court ...... In other words, a rule is not properly original process in any case, but is auxiliary and for the facilitating of jurisdiction already acquired" (p. 11). And it is to be noted that "Rule to show cause why decree in divorce should not be vacated" was one of the rules specifically mentioned by him (see p. 53). In Pennsylvania we have no statute, and in Lycoming County there is no rule of court, providing for service of a rule to show cause on a nonresident. There is no provision that service of such a rule, in any case,—even on a resident—, must be made by the sheriff. It is just as valid and effectual, if made by a private citizen, if proof, by affidavit, is duly made. Even in equity, our Supreme Court rules, which have

the force and effect of law, provide that bills in equity may be served by "any adult person, and, in default of an appearance by the person served, an affidavit of proof of service shall be made and filed" (Rule 27). In actions at law only the writ is required to be served by the sheriff; pleadings and subsequent motions, etc., leading up to judgment may be served by any adult person, and so may rules to set aside or open the judgment.

In Edson v. Edson, 108 Mass. 590, a case involving similar proceedings against a husband by his wronged wife, an order of notice issued to which he appeared and moved to dismiss the proceeding. The Supreme Judicial Court, speaking through Chief Justice BIGELOW, said: "This is not a new suit in the nature of an original proceeding to obtain a decree of divorce, in the course of which it is attempted to treat a former decree as null and void. But it is a petition, addressed to the sound judicial discretion of the court, asking that a decree rendered at a former term may be reopened and vacated, on the ground that it was fraudulently obtained. *It is in the nature of an application to correct the record,* and prevent wrong and injustice from the effect of the judgment as it now stands."

Hence most of the cases relied on by the appellant are not in point, for they relate to the service of a primary writ or original process. It may be admitted that if this were a new action brought by Mrs. Carey against the appellant, the court below would not acquire jurisdiction over the latter's *person* by a service such as was made here. But the appellant himself brought this action. He instituted the proceeding and voluntarily subjected himself to the jurisdiction and authority of the court. Once in,—under our practice—, he remains subject to such jurisdiction for the purpose of purging its records of a decree fraudulently and corruptly secured by him. Such a decree, so fraudulently obtained, may be vacated and set aside when libellant is out of

the State: Allen v. Maclellan, supra; or even after the death of the guilty party: Boyd's App., supra; Fleming v. Fleming, supra; Fidelity Ins. Co.'s App., 93 Pa. 242.

Being only auxiliary to an action which he brought, and to which, therefore, he has appeared in the most positive of all forms, he cannot thereafter be permitted to appear conditionally or 'de bene esse'. If the attorney who represented appellant in his divorce action were living, service of the rule to vacate could have been made upon him. His death and the return of the libellant to his real domicile do not prevent the court from vindicating the law and purging its records of the fraud practised on it. In the absence of a statute or rule of court directing how service of such a rule shall be made, the court can certainly act when it is satisfied that actual notice of the proceeding to vacate has been given him. Mr. Woodward in his 'Motions and Rules in Pennsylvania' (1934) says (p. 272): "Since notice of a motion or rule is not process, it would seem, in principle, that it might be served anywhere, if it gave reasonable opportunity for action."

The learned court below in a very carefully considered opinion in which reference is made, inter alia, to Haddock v. Haddock, 201 U. S. 562; Pennoyer v. Neff, 95 U. S. 714; Cates v. Cates, 202 Mo. App. 352, 216 S. W. 573; State of Montana ex rel. Sparrenberger v. Dist. Court of 16th Jud. Dist., 66 Mont. 496, 214 Pac. 85; Everett v. Everett, 47 N. Y. Supp. 994; Johnson v. Coleman, 23 Wis. 452, came to the conclusion, in substance, that the decree of the court in the divorce action brought by the appellant constitutes a *res*, and that a proceeding to vacate or set it aside on the ground of fraud by libellant was in the nature of a proceeding in rem, of which the court had jurisdiction and as to which personal service on him was not absolutely necessary. We agree with that conclusion. Paraphrasing the language of the Appellate Division of the Supreme

Court in Everett v. Everett, supra, to correspond with the practice in this State: "A decree duly entered in this State annulling a marriage is to be deemed a res remaining within the jurisdiction, to the extent, at least, that the court retains power over it to set it aside on the ground of extrinsic fraud, at the instance of the wronged party, if satisfied that the decree was fraudulently obtained, after hearing on rule to show cause, notice of which was given the wrongdoer either personally, or constructively, by direction of the court if personal notice is not available, provided it is reasonably adapted to give him actual notice of the proceeding." Or in the language of the Sparrenberger case (214 Pac. p. 88) "Where one ...... invokes the jurisdiction of the court to adjudicate upon his status and by fraud induces it to enter a decree to the injury of another, the court having jurisdiction over the subject matter in the first instance will assert the authority of maintaining jurisdiction over it in order to right the wrong done."

The position of the learned court below is well stated in the following extracts from its opinion: "It appears in the above cited cases of Everett v. Everett, Johnson v. Coleman, Cates v. Cates and Montana ex rel. Sparrenberger, in which constructive or so-called 'substituted' service of notice was had on a non-resident husband, that such service was in compliance with statutes of the respective jurisdictions, and following such constructive service the husband entered a special or qualified appearance to have service stricken off. It was also stated in the opinions in those cases that the chief purpose of those statutory requirements, as to notice by publication, was ...... that the respondent might possibly receive actual notice of the charge; in other words, 'actual notice' was the real objective sought rather than the mere empty compliance with a formality. Whereas, in Pennsylvania there is no similar statutory provision

providing for service of notice of rule by publication, on a party residing outside the state, nevertheless, in the absence of such a provision, this court is firmly of the opinion that the 'actual notice' of said rule to show cause,. accompanied by a copy of the wife's petition, which was delivered to the respondent, John Carey, in person, coupled with his acknowledgment of such notice as shown by his consequent action thereon in employing counsel to enter a qualified appearance for him, constitute a service and notice sufficient to bring the respondent and the subject matter of the petition within the jurisdiction of this court. In the instant case respondent received the actual notice which statutes of other states sought to accomplish, by publication." After referring to the fact that a gross fraud was practised on the court as well as on the wife petitioner, the court said: "The record of the judgment is in this state, and must be set aside here if it is to be vacated at all. Nowhere else can full and adequate relief be afforded, and the fact that the wrongdoer has departed to another jurisdiction should not be allowed to defeat such relief. The jurisdiction of this court cannot be denied without rendering the courts powerless to get rid of judgments which fugitives have procured from them by fraud. ...... The libellant in said divorce proceedings now challenges the jurisdiction of this court, which jurisdiction he fraudulently invoked in behalf of his designs, claiming to be immune from service of our notice by reason of non-residence. If libellant, by such course of conduct can render himself immune from service of notice of a rule issued out of the very court he deceived, then the court would find itself powerless to set aside the decree obtained by fraud. In view of the authorities above cited, we cannot admit that his position can be sustained. To admit the court's inability to correct such a wrong would be to put a premium on fraud and deception. Despite the absence of a statute in Pennsyl-

vania providing that notice of a rule may be served by publication on a non-resident, such as is enacted in some other states, this court does not believe that we are so fettered and handicapped as to stand powerless in the presence of such a situation ...... In the absence of any decisions by the appellate courts of Pennsylvania, holding otherwise, this court adopts and applies the principles that were applied in the cases above cited, and holds that this court continues to retain jurisdiction over the subject matter of the controversy, to wit, the marital status of the libellant, John Carey, and the judgment entered in said divorce proceedings, and by service of actual notice on him of the rule to show cause, issued on the petition of Florence M. Carey, as well as of a copy of her said petition, the said John Carey is, for the purpose of passing on this question, within the jurisdiction of this court."

Order affirmed and appeal dismissed.