## Brosch v. Brosch

414

*Louis Gordon,* for libellant.

*Paul H. Rhoads,* of *Weiss & Rhoads,* and *Stevens & Lee,* for respondent.

WOODSIDE, J., May 14, 1945.—The decree of divorce in this case was obtained by fraud and must be opened. The libel was filed May 24, 1943. At a hearing before a master on September 2, 1943, libellant testified that he took up his residence in this county on May 17, 1943, one week before the libel was filed. Respondent was served personally but did not enter an appearance, nor did she appear at the hearing either in person or by counsel. The master recommended that a divorce be granted on the grounds of indignities. The report was approved by the court, the decree was signed October 14, 1943, and on January 7, 1944, in the same term in which the decree was signed, upon petition of respondent alleging fraud, a rule was granted upon libellant to show cause why the decree should not be opened. Evidence was submitted to the court on November 28, 1944, and the case subsequently argued.

The story developed before the court hardly seems credible, and yet we have not the slightest doubt concerning its truth. The testimony establishing respondent's case was so overwhelming, the admissions of libellant so far reaching, and such denials as he attempted to make so weak and unimpressive, that there is no room left for doubt. From the testimony we find the following facts:

The parties are both college graduates, and apparently people of intelligence and some refinement. They were married in 1939 and have one child. From the time of their marriage libellant has been a traveling salesman, spending much time away from home, but he usually was home over the week-end, and often one or two other nights a week.

Following their marriage, the parties lived with the wife's parents at Kutztown, Berks County, Pa., for a short time and then moved to a home which they rented, at 435 East Main Street, Kutztown, and remained there until approximately July 3, 1943, when together with

their young son they moved to a new home at Kutztown, R. D. No. 2, which had been purchased by libellant several months previously.

On June 1, 1943, while the parties were residing at Kutztown, respondent was served with the subpœna in divorce in this case. Her husband was away at the time, but when he came home a few days later, she talked to him about it, and said she did not think a divorce advisable, particularly on account of their young child. Libellant thereupon told her he did not intend to go through with the divorce proceedings. He continued to live with his wife and child as before; to take his wife on trips; to have sexual relations with her; to go out with her socially, and to write endearing letters to her when he was away on his business trips.

When the notice of the master's hearing was received by respondent her husband was again away on a business trip. As soon as he came home she told him that she thought he had dropped the case but that she now had received a notice of a hearing; that she was going to Harrisburg to get a lawyer and that if he wouldn't take her, she was going on the train. He again told her that he did not intend to get the divorce. To reassure her he said his lawyer told him that as long as they continued to live and cohabit together he could not get a divorce, and that she knew she could get plenty of witnesses to prove that they were living together as husband and wife. Apparently still concerned, she further discussed the matter with him, but he assured her that he was not going to the hearing and told her that at the time of the hearing he would be in the coal region. Instead he came to Harrisburg and testified at the hearing. Thereafter, he continued to live and cohabit with his wife, to take her on trips, to write endearing letters to her and to act toward her just as he had prior thereto. In due time the decree in divorce was obtained, but they still continued to live and cohabit together without change.

On New Year's Eve libellant packed a bag and told respondent he was going to New York to a party. When she told him she was going along he told her that he would not take her because he was free from her, having obtained a divorce. This was the first that respondent knew that a hearing had been held and a divorce granted.

She immediately consulted counsel, and a few days later executed a petition alleging that she had a good defense to the divorce; that she was kept from presenting her defense by the fraud of libellant, and that he was not a resident of Dauphin County at the time the libel was presented here. She prayed that the decree in divorce be opened.

The petition was presented to the court on January 7, 1944, and a rule granted upon libellant. In her petition she set forth that libellant had not left her on or about May 16, 1943, as set forth in his libel, but that he had left her on December 31, 1944. But about the time the petition to open the decree was filed libellant returned to respondent and continued to live with her as before. He continued to have sexual relations with her as frequently as before the divorce; to take her on trips and register as husband and wife at hotels; to write her endearing letters; to attend social affairs with her and to sleep in the same bed with her when they were visiting relatives and friends.

This continued until September of 1944, when in spite of the pending rule and the court order he "marries" another girl, returning again to respondent when they again cohabited.

If extrinsic fraud was committed on the court by libellant, the court has the power and duty to rectify it: Boyd's Appeal, 38 Pa. 246 (1861) ; Allen v. Maclellan, 12 Pa. 328 (1849) ; Fleming v. Fleming, 83 Pa. Superior Ct. 554 (1924) ; Willetts v. Willetts, 96 Pa. Superior Ct. 198 (1929) ; Carey v. Carey, 121 Pa.

Superior Ct. 251, 256 (1936) ; Templeton v. Templeton, 86 Pa. Superior Ct. 142, 144 (1926) ; Walton v. Walton, 84 Pa. Superior Ct. 366 (1925) ; Estok v. Estok, 102 Pa. Superior Ct. 604 (1931). By extrinsic fraud is meant some act or conduct of the prevailing party which has prevented a fair submission of the controversy: Willetts v. Willetts, 96 Pa. Superior Ct. 198, 204 (1929) ; Carey v. Carey, 121 Pa. Superior Ct. 251, 256 (1936).

The evidence taken by the court shows that libellant by telling his wife he had dropped the divorce case, by continuing to live and cohabit with her, by representing that he would not appear at the hearing, and would not even be in Harrisburg at the time of the hearing, fraudulently prevented his wife from appearing and presenting her testimony.

He was the only witness who appeared before the master and, although his testimony established grounds for granting a divorce to the satisfaction of the master and the court, nevertheless, if respondent had appeared and cross-examined him and presented testimony on her own behalf, the master and the court may well have found libellant unworthy of belief. As soon as she discovered that the divorce case had been heard, and a decree signed, she acted promptly in an effort to have the judgment opened so she could be heard by the master.

While there is no time limit within which to act in striking off or vacating a judgment, a petition to open where the cause has been litigated must be made within term time, except in extraordinary equitable circumstances requiring a contrary result: Salus et al. v. Fogel, 302 Pa. 268 (1931) ; Nixon v. Nixon, 329 Pa. 256 (1938). Here the decree was signed October 14, 1943, and the rule to open was signed January 7, 1944, both within the September term, 1943. The granting of the rule suspended the operation of the decree until the

motion is disposed of: Fisher v. Fisher, 74 Pa. Superior Ct. 538, 544, 545 (1920). Having been made within the term, the rule can be heard and decided at a subsequent term: Lance v. Bonnell, 105 Pa. 46 (1884).

With total disregard of the pending rule upon him which suspended the operation of the decree, libellant remarried. This proceeding is equitable in nature. Remarriage in good faith after a decree is signed, when no petition to open is filed, and when coupled with inattention and indifference on the part of the other spouse throughout the original proceedings, creates consideration of equity on the side of the remarried person: Nixon v. Nixon, 329 Pa. 256, 266, 267 (1938). But here libellant remarried in the face of the suspended decree, and this, coupled with his conduct toward respondent since the decree was signed, merely accentuates his fraud, his disrespect for the law, and his lack of common decency. If any person is to suffer by the subsequent illegal marriage of libellant it is he and not respondent: Allen v. Maclellan, supra.

The question of the residence of libellant involved "extrinsic fraud" or, in other words, "perjury at the trial".

In her petition to open the decree respondent alleges that "libellant's averment in the libel and his testimony before the master that he was a resident of Dauphin County were false". This averment was denied in the answer and testimony was taken on the question before the court.

Libellant testified before the master that he was a resident of 57 South Cameron Street, Harrisburg, Dauphin County, since May 17, 1943, one week before the libel was filed. If true, the divorce action was legally brought in this county: The Divorce Law of May 2, 1929, P. L. 1237, sec. 15, as amended, 23 PS §15.

But the evidence presented to the court convinces us libellant was not a resident of Dauphin County at any

time during 1943, which was the year in which the libel was presented and the decree signed.

He swore to the libel May 21, 1943. He testified that during the months of May and June of that year he spent every week-end with his wife at their home in Berks County, unless he happened to be away over the week-end on a business trip, which did not happen more than once during that period. During the week he was away on business trips as usual. During all of this period that the divorce was pending, and for nearly a year after the decree was signed, he continued to live and cohabit with his wife at their home in Berks County. He testified he moved out to the country home in June or July of 1943, and from then until September 1944 he spent on the average of three nights a week there; the majority of those nights being over the week-ends. During this period his job kept him away from home a good portion of the time during the week. He admits spending the same number of nights with his wife during this period as prior to the time he "changed" his residence to Harrisburg.

The testimony of libellant concerning his residence is interesting.

"Q. Then when did you move to the second house in Kutztown?

"A. We moved there the early part of '43 as I recall; in fact, I am a little vague on dates when that transpired.

"Q. What was the last address in Kutztown?

"A. 349 East Main Street.

"Q. And then when did you move to the R. D. 2?

"A. It was July of '43."

He renewed his 1944 operator's license showing his address as R. D., Kutztown. He entered into an agreement with the Commonwealth on September 23, 1943, in which he filled in his own address as R. D., Kutztown. He entered into another agreement with the

Commonwealth on November 4, 1943, in which his address appeared as R. D. 2, Kutztown. During 1943 he had much of his clothing at Kutztown. He wrote numerous letters in 1943 and 1944 to his wife at Kutztown, saying he would be "home" at certain times or dates. Actually he was "home" at Kutztown as frequently after he obtained the divorce as before he applied for it. (Some witnesses said more frequently.)

He did have a room in a residence at 57 South Cameron Street, Harrisburg, even prior to May 17, 1943. He gave it as a "business address" on an insurance policy in 1942. His wife slept there one night with him. His child was never there. He slept in the room occasionally when he was in this vicinity. During 1943 and 1944 he could not have been there much of the time. He was at his Kutztown "home" on the average of, he says 3, she says 4, times a week. His testimony shows he traveled over 30 counties in Pennsylvania and a number in Maryland and West Virginia, and the record shows he also spent time in New York, Philadelphia, and Detroit. An examination of the letters he wrote to his wife in 1943 and 1944, and the testimony of himself and wife, lead one to the conclusion that he had little time left to be in Harrisburg.

All libels for divorce shall be exhibited to the court of the county where libellant or respondent resides. The Divorce Law of May 2, 1929, P. L. 1237, sec. 15, as amended, 23 PS §15. Libellant must have been a bona fide resident in this Commonwealth at least one whole year immediately previous to the filing of his libel: Section 16 of The Divorce Law, supra, 23 PS §16.

The requirement relating to residence in this Commonwealth goes to the jurisdiction of the court, but the requirement of section 15 is one of venue only: Krusch v. Krusch, 6 D. & C. 639 (Phila. 1925). Nevertheless, if it appear in the proceeding that libellant was not a resident of this county at the time he filed his libel, the

divorce should be refused: Krusch v. Krusch, supra; Mauser v. Mauser, 59 Pa. Superior Ct. 275 (1913).

"Residence" within the meaning of the statute means a "permanent one with domiciliary intent". "Residence" is a physical fact, a home in which the party actually lives: Huston v. Huston, 130 Pa. Superior Ct. 501 (1938). When a residence is once acquired, it is continued until it is shown to have been changed, and where a change is alleged the burden is upon the one making the allegation to prove it and to establish: (1) a residence in a new locality; and (2) the intention to remain there: Alburger v. Alburger, 138 Pa. Superior Ct. 339 (1939). The new domicile must be acquired by actual residence. The "change must be animo et facto, and the burden of proof is on the party who asserts the change": Price v. Price, 156 Pa. 617, 627 (1893); Commonwealth ex rel. Saunders v. Saunders, 155 Pa. Superior Ct. 393, 396 (1944).

Here libellant "lived" in Berks County according to his own testimony until May 16, 1943. His own testimony shows that subsequent to that time at least until approximately a year after the decree was signed, he continued to be with his wife and child in Berks County as frequently as before. The evidence convinces us beyond any doubt that he did not have a bona fide residence in Dauphin County at the time of presenting his libel to this court. He "actually lived" in Berks County.

The question of the residence of libellant was put squarely in issue and the evidence leaves no doubt that neither libellant nor respondent was a resident of this county at the time the libel was presented to this court. If we felt it were proper procedure to do so, we would vacate the decree forthwith, but this being a petition to open we feel compelled to follow the practice laid down in Nixon v. Nixon, 329 Pa. 256 (1938), and to open rather than vacate the decree. We shall thus return the case to the master. It will become his duty to

hear respondent and her witnesses not only on the question of the cause of divorce, but also on the residence of libellant. In the light of the evidence before us we cannot conceive how the master could find libellant to have had a bona fide residence in this county when the libel was filed. Neither of the parties being a resident of this county when the libel was presented, the divorce cannot be granted in this county. On the basis of the evidence before us we expect such a finding from the master should libellant see fit to press his case further in this county.

Libellant fraudulently kept respondent from appearing at the hearing and falsely represented in his libel and to the master that he was a resident of Dauphin County. The decree should be opened and the case returned to the master to be heard de novo. This will afford respondent an opportunity to raise any question of jurisdiction or venue, to cross-examine libellant and any witnesses he may have, and to present such proper evidence as she desires to present.

The master need not proceed until there is deposited in the prothonotary's office the usual sum of $75 on account of additional master's fee and costs.

We think the district attorney should examine this case to determine whether prosecution should be brought against libellant for perjury or any other offense which the evidence of this case may indicate was committed in this county. We therefore direct the prothonotary to deliver forthwith to the district attorney for his examination a copy of this opinion along with the testimony and the exhibits taken before the court and the testimony taken before the master.

And now, to wit, May 14, 1945, the decree in divorce signed October 14, 1943, is hereby opened, and the case returned to the master with direction to proceed in accordance with this opinion.