580 A.2d 811

**Eileen MELVIN, Appellee,**

v.

**John MELVIN, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 13, 1989.

Filed Sept. 20, 1990.

2

4

Stephen L. Needles, Newton, for appellant.

Sue N. Lang, Levittown, for appellee.

Before DEL SOLE, KELLY and HESTER, JJ.

KELLY, Judge:

This is an appeal from an order refusing to issue a rule to show cause why an order awarding protection from abuse should not be vacated, and a new trial on the petition be granted, when the protection order was granted following proceedings under Pa.R.C.P. 218 in absence of the defendant appellant, who alleged in the petition for the rule that he had arrived only three minutes late, but that the proceedings had already ended, and the trial court refused to reopen the matter in order for him to present his defense. We affirm.

## FACTS AND PROCEDURAL HISTORY

John and Eileen Melvin were married February 15, 1969. The marriage produced four children. In November 1979, the parties separated.

The record in this case contains a verified petition for protection from abuse filed November 9, 1982, which was accompanied by a supporting affidavit sworn to by Eileen Melvin on personal knowledge, dated September 2, 1982. The petition and affidavit averred that on August 21, 1982, John Melvin had repeatedly stabbed Eileen Melvin with a kitchen knife, *until the blade broke*, and that Eileen Melvin had gone to the Hospital to have the wounds cleaned and sutured. The accompanying draft protection orders, however, are unexecuted. The record fails to disclose whether a protection from abuse order was granted eventually, or whether criminal charges ever were brought regarding the underlying incident.

On April 7, 1987, the trial court entered an interim *custody* order which expressly and unequivocally directed John Melvin to have "no contact between you and these children or Mrs. Melvin until I hear from [your counsel] that the reports I've requested him to get are complete and ready." The order was made perpetual pending further order of the Court. (N.T. 4/9/87 at 4). The transcript clearly indicates that the hearing was regarding custody, and that no protection from abuse petition was presented or acted upon at that time. (N.T. 4/9/87 *passim*).

On May 12, 1989, John Melvin was arrested pursuant to a warrant issued May 9, 1989, and charged with indirect criminal contempt. Despite the fact that the order alleged to have been criminally violated was a *custody* order, the code section cited in the complaint and the bail forms indicated that John Melvin had been charged with indirect criminal contempt of a protection from abuse order. *See* 35 P.S. § 10190. On the magistrate's notice form the phrase "Custody" was inserted in only one of the several references to the type of indirect criminal contempt offense

charged. The other references were to contempt of a protection from abuse order.

On May 17, 1989, the charge of indirect criminal contempt was dismissed based upon the trial court's determination that there was no protection from abuse order in effect. The verdict form noted that a petition for a protection from abuse order was to be filed; it did not mention any amendment of the charge to assert indirect criminal contempt of the custody order under 42 Pa.C.S.A. 4135(b). The transcript of the May 17, 1989 hearing was not included in the record certified to this Court on appeal.

On May 19, 1989, a petition for a protection from abuse order was filed. While no interim relief was granted (35 P.S. § 10188), a hearing date was set for determination of the merits of the petition (35 P.S. § 10185).

On May 26, 1989, John Melvin failed to appear for the hearing at 10:00 a.m. as directed. No explanation having been made in advance for John Melvin's failure to appear as ordered, the trial court elected to proceed on the petition for a protection from abuse order (see Pa.R.C.P. 218), and the charge of indirect criminal contempt of the custody order (see Pa.R.Crim.P. 1117). Rather than proceeding to hear evidence in support of the petition or on the substance of the contempt charge, however, the court instead incorporated by reference the proceedings before that court a week earlier on May 17, 1989. As noted above, the transcript of that hearing, if any was made, was not included in the record certified and transmitted to this Court on appeal. No further evidence was presented. (N.T. 5/27/89 at 2–4).[1]

The trial court then granted the petition for a protection from abuse order. The court also found John Melvin in

1. We note that John Melvin has not raised an objection to the trial court's decision to proceed, or the manner in which it proceeded, as to either matter in this appeal. Particularly, we note his acceptance of the characterization of the proceedings as having been conducted under Pa.R.C.P. 218, and the absence of any challenge to adequacy of the proceedings in that regard.

indirect criminal contempt of the custody order, but suspended sentence.[2]

The transcript reveals that appellant arrived after these proceedings had closed; but, does not note the time he arrived. Moreover, while counsel for Eileen Melvin called John Melvin's tardy arrival to the court's attention, John Melvin did not address the court or make any remarks of record at that hearing. (N.T. 5/27/89 at 2–4). Though represented by counsel in prior and subsequent proceedings, no counsel appeared for John Melvin prompt, tardy, or otherwise on May 26, 1989.

No post-verdict motions were filed to *either order*. *See* Pa.R.C.P. 1905; Pa.R.C.P. 227.1–227.4; Pa.R.Crim.P. 1123. *Cf. Lucia v. Lucia,* 318 Pa.Super. 569, 465 A.2d 700 (1983) (failure to file timely post verdict motions waived challenge to the sufficiency of the evidence to support the granting of a protection from abuse order). No judgment confirming the verdict of the court in the Pa.R.C.P. 238 trial was entered by order of court or by praecipe of a party pursuant to Pa.R.C.P. 1905(b) and Pa.R.C.P. 227.4(1)(b). No direct appeal was attempted.

On June 30, 1989, thirty-four days after the protection from abuse order was granted, counsel for John Melvin filed a petition to open the judgment granting the petition from abuse order. The petition alleged that John Melvin had arrived at 10:03 a.m. (only three minutes late), and that the trial court abused its discretion in failing to re-open the proceedings to permit him to proceed with a defense. On July 3, 1989, the trial court denied the petition without issuing a rule to show cause why the order of May 26, 1989

2. We note that the record does not contain an amended complaint or other indication that the charge improvidently brought under 35 P.S. § 10190 was replaced by a proper charge under 42 Pa.C.S.A. § 4135(b). However, as the contempt conviction and suspended sentence were not the subject of this appeal, such documents would not necessarily be included in the record transmitted to this Court, even if they had been properly filed and included in the record in the trial court.

should not be vacated and judgment opened.[3]

On appeal, John Melvin contends that the trial court's failure to re-open the proceedings when he arrived three minutes late, violates procedural and substantive due process mandates. In his brief to this Court, he acknowledged that the court had a right to proceed in his absence (Appellant's Brief at 6, *citing* Pa.R.C.P. 218), and that its authority to open judgment was discretionary. *Id.* Nonetheless, he argued that the averments in his petition *mandated* issuance of a rule to show cause. However, he cited no authority for this proposition. Moreover, he in no way explained how either procedural or substantive due process rights were implicated. (Appellant's Brief at 6–8).

In response, Eileen Melvin argued in her brief that the petition to open was not filed in a timely manner, and that no explanation was provided for the delay. She noted but did not address further another requirement, *i.e.* that the petition must set forth a meritorious defense to the default judgment. She also countered that John Melvin was thirty minutes late, rather than merely three.

The trial court, in its Pa.R.A.P. 1925(a) opinion, asserted two grounds for denying the petition. First, the trial court found no authority to open judgment in a protection from abuse matter when no post-verdict motions were filed and no direct appeal was taken from the order granting protection from abuse. Second, the trial court declined to open judgment based upon John Melvin's failure to set forth good cause for his tardy appearance on May 26, 1989. (Trial Court Opinion at 2).

The appeal is now properly before this Court for disposition. We affirm on alternate grounds.

---

**3.** We note that the petition of June 20, 1989 in no way challenged the trial court's finding that John Melvin was in indirect criminal contempt of the custody order, or the suspended sentence imposed upon that conviction. We, therefore, have no occasion to consider the procedural or substantive correctness of that aspect of the proceedings.

## I. PROTECTION FROM ABUSE GENERALLY

The seriousness of domestic abuse is well recognized in this Commonwealth, and in fact has been examined and detailed by the Pennsylvania Attorney General's Family Violence Task Force (AGFVTF) Report which was issued in January of 1989. *See* AGFVTF, *Domestic Violence: A Model Protocol for Police Response,* at 4–5 (Pa.1989) (collecting and analyzing studies and statistics and making detailed recommendations). The serious problem of domestic abuse plainly presents grave challenges to society in general, and the criminal and civil justice systems in particular.

Pennsylvania has been a leading force in the reform of what is now recognized as the woefully inadequate "traditional" response to domestic violence. *See AGFVTF Report,* at 21–22. Both our Protection From Abuse Act and our Probable Cause Arrest Statute have been aptly characterized as "vanguard" reforms.[4]

The provisions of the Protection From Abuse Act, and the amendments to that act by the Probable Cause Arrest Statute, as well as the various publicly and privately funded services provided to victims of domestic abuse were designed to ameliorate the inadequacies of the traditional approach to domestic violence. *See* 35 P.S. § 10181 *et seq.* They will be wholly ineffectual, however, if the police, the courts and counsel fail to fulfill their express, statutory obligations to assist victims of such abuse to pursue the

4. *AGFVTA Report,* at 21–22; Merwine, *Pennsylvania's Protection From Abuse Act,* 91 Dickinson L.Rev. 805, 805–32 (1987); Quinn, *Ex Parte Protection Orders,* 58 Temple L.Q. 843, 843–72 (1985); Sanson, *Spouse Abuse: A Novel Remedy For a Historic Problem,* 84 Dickinson L.Rev. 147, 147–70 (1979); Note, *Domestic Relations—The Protection From Abuse Act,* 51 Temple L.Q. 116, 116–25 (1978); Schickling, *Relief For Victims of Intra–Family Assaults—The Pennsylvania Protection From Abuse Act,* 81 Dickinson L.Rev. 815, 815–21 (1977); *see generally* Triantafillou, *Massachusetts: New Legislation to Help Battered Women,* 27 Judges Journal 20–23, 50–52 (summer 1988); Dutton, *The Criminal Justice Response to Wife Assault,* 11 Law & Human Behavior 189, 189–206 (1987); Bascelli, *A Cry for Help: An Analysis of Wife Abuse,* 13 Journal of Psychiatry & Law 165, 165–93 (spring/summer 1985).

benefits our "vanguard" reforms offer. *See generally* 18
Pa.C.S.A. § 2711(d); 35 P.S. §§ 10183.2; 10184(f); 10188(d);
10188.1; *see also AGFVTF Report, supra,* 33–35, 36, 41–46
& *passim.*

Here, despite the formal assertion of a violent criminal
assault and subsequent menacing conduct, more than six
years passed before a determination was made and relief
was finally granted to Eileen Melvin for protection from
abuse. In the interim, a custody order was apparently
intended to take the place of a protection from abuse order.
Beyond the absence of the vindicating/stigmatizing benefits
intended to result from the issuance of a protection from
abuse order, we note that the procedures and penalties for
contempt of a custody order and those for contempt of a
*protection from abuse order* differ dramatically. *Com-
pare* 42 Pa.C.S.A. 4135(b) and 35 P.S. 10190; *cf. Wagner v.
Wagner,* 387 Pa.Super. 246, 564 A.2d 162 (1989). Moreover,
such remedies are *not* intended to be mutually exclusive;
rather, the protection available under the Protection from
Abuse Act are *in addition to,* and *not* in substitution of,
*other remedies. See* 35 P.S. § 10189.[5]

We urge all involved in such cases to refer to the applica-
ble statutes, procedural rules, and case law, regarding
Pennsylvania's vanguard reforms in the area of domestic
abuse in deciding how to proceed in such cases. While
more traditional remedies like those initially utilized here
remain available to victim's of domestic violence, we note
that Pennsylvania's vanguard reforms relating to domestic
violence were enacted precisely because of the widely per-

---

5. A judgment entered granting protection from abuse remains in
effect for the time specified in the judgment which cannot exceed one
year. *See* 35 § 10186(b). Such orders may only be extended beyond
the period specified in the initial judgment upon a finding of con-
tempt of the initial judgment, in which case the protection granted by
the initial judgment may be extended for a period of up to one year.
*See* 35 P.S. §§ 10190(b); 10186(b); *cf.* Phil.Co.P.F.A. Rule 18. Impor-
tantly, similar relief, *not subject to the durational limitations of 35 P.S.
§ 10186(b),* may be sought under 23 P.S. § 401(c); Pa.R.C.P. 1910.25;
Pa.R.C.P. 1915.13. There is no election of remedies in this respect.
35 P.S. § 10189.

ceived *inadequacies* of the traditional remedies standing alone.

## II. ABSENCE OF FINAL JUDGMENT

■ On May 26, 1989, the trial court entered an order granting Eileen Melvin's Petition for Protection from Abuse following a trial conducted in John Melvin's absence, under Pa.R.C.P. 218. Notwithstanding the subsequent conduct and assumptions of the trial court and the parties, the order entered on May 26, 1989 was not a final appealable order under the applicable rules of civil procedure.

Protection from abuse proceedings are governed by Pa.R. C.P. 1901 to Pa.R.C.P. 1905. *See* Pa. Const. Art. V, sec. 10 (constitutional authority to promulgate procedural rules); 35 P.S. 10189 (legislative authorization with respect to protection from abuse cases). Under Pa.R.C.P. 1905(a), the *decision* in a protection from abuse case must be made in accordance with Pa.R.C.P. 1038(b) and (c) which expressly authorizes the trial court to render its decision orally in open court and to direct the order to be transcribed and filed forthwith.[6] Under Pa.R.C.P. 1905(b), the post trial proceedings in protection from abuse case are governed by Pa.R.C.P. 227.1 to 227.4 inclusive. It is with respect to the application of those rules that the parties were mistaken.

**6.** RULE 1905. DECISION. POST-TRIAL RELIEF.
 (a) The decision of the court shall be governed by Rule 1038(b) and (c).
 RULE 1038 TRIAL WITHOUT JURY.
 \* \* \* \* \* \*
 (b) The decision of the trial judge may consist only of general findings as to all parties but shall dispose of all claims for relief. The trial judge may, if he wishes, include as part of the decision specific findings of fact and conclusions of law with appropriate discussion.
 (c) The decision may be made orally in open court at the end of the trial, and in that event shall be forthwith transcribed and filed in the office of the prothonotary, or it may be made thereafter in writing and filed forthwith. In either event the prothonotary shall notify all parties or their attorneys of the date of filing. The trial judge shall render his decision within seven (7) days after the conclusion of the trial except in protracted cases or cases of extraordinary complexity.

12

Review of the record, the briefs of the parties, and the opinion of the trial court reveals that all were under the mistaken impression that the decision issued May 26, 1989 pursuant to Pa.R.C.P. 1905(a) and Pa.R.C.P. 1038(b & c) was a *final order*. Under Pa.R.C.P. 227.4(1)(b), however, it is clear that before the decision of May 26, 1989 could become final and appealable, post-verdict motions, if any, had to be properly disposed or the time for filing such motions expired *and* it was necessary for the court to then direct entry of *judgment* or for one of the parties to file a praecipe for entry of judgment.[7] In absence of the entry of a judgment under Pa.R.C.P. 1905(b) and Pa.R.C.P. 227.4, there is no final judgment granting protection from abuse.

Consequently, we conclude that the assumptions of the trial court and the parties to the contrary notwithstanding, there is *as yet* no final "protection from abuse order" *judgment* in this case. If and when, one of the parties shall praecipe for entry of judgment, then and only then, shall a final and appealable "protection from abuse order" *judgment* exist in this case.

The effect of the *interlocutory* order entered on May 26, 1989 is precisely the same an an interlocutory order under 35 P.S. § 10185(b); both provide *interim* relief pending entry of an appealable final judgment under Pa.R.C.P.

7. RULE 1905. DECISION. POST–TRIAL RELIEF.
 \* \* \* \* \* \*
 (b) Post-trial relief shall be governed by Rules 227.1 to *227.4 inclusive.*
 RULE 227.4 ENTRY OF JUDGMENT UPON PRAECIPE OF A PARTY
 In addition to the provisions of any Rule of Civil Procedure or Act of Assembly authorizing the prothonotary to enter judgment upon praecipe of a party, *the prothonotary shall, upon praecipe of a party:*
 (1) *if no timely post-trial motion is filed* or if a waiver in writing of the right to file post-trial motions signed by all parties has been filed,
 (a) enter judgment upon the verdict of a jury,
 (b) *enter judgment upon the decision of a judge following a trial without jury,* or
 (c) enter the decree nisi as the final decree; or
 (2) enter judgment when a court grants or denies relief but does not itself enter judgment or order the prothonotary to do so.
 (Emphasis added).

227.4. Significantly, however, it is the final judgment, and not either of the types of interlocutory orders, to which the one year durational limitation of 35 P.S. § 10186(b) applies. We note that it will be up to the trial court to decide, if and when a proper petition is filed, whether to exercise its discretion to modify its one year protection order, based upon the substantial delay in the entry of a final judgment in this case and/or any other relevant circumstances. 35 P.S. § 10185(b) (protection orders may be modified at any time upon petition).[8]

■ None of these facts affect this Court's jurisdiction in the instant case. This appeal was taken from an order denying a petition to issue a rule to show cause why the protection from abuse order of May 26, 1989 should not be open or struck. Such orders are interlocutory, but nonetheless appealable of right. Pa.R.A.P. 311(a)(1).

■ However, as no final "protection from abuse order" judgment has been entered, as yet, in this case, it follows *necessarily* that the trial court could not have abused its discretion in refusing to issue a rule to show cause why a non-existent *judgment* should not be opened. *Final judgments,* and *not interlocutory orders,* are subject to such petitions. In this *procedural* sense the petition for the rule to show cause was premature, though *substantively* the request for a new trial on equitable grounds after expiration of the time for post-verdict motions was *belated* (discussed *infra* at Part III).

■ When an appeal is improvidently taken prior to entry of final judgment, ordinarily this Court will direct the appellant to praecipe judgment and notice of appeal will be

---

**8.** The decision on May 26, 1989 involved the entry of an interlocutory order. That order was and remains enforceable pending entry of final judgment upon praecipe, like any other interlocutory order which may be enforced by contempt proceedings. That the delay in filing praecipe for judgment in this case will result in the effective extension of the protection from abuse order beyond the time it would have been in effect had a timely praecipe been filed creates no particular equity in this case, as John Melvin had as much right and authority to praecipe judgment in this case as did Eileen Melvin. Pa.R.C.P. 227.4(1)(b).

treated as being filed on the date judgment is entered. *See* Pa.R.A.P. 301(a); Pa.R.A.P. 905(a); *cf. Seay v. Prudential Ins.,* 375 Pa.Super. 37, 543 A.2d 1166 (1988). Here, however, the appeal was taken from the collateral order denying issuance of a rule to show cause why an interlocutory order (mistakenly believed to be a final judgment) should not be opened. At this late date, even if a praecipe were to be filed and judgment were to be entered, such events could not affect, retrospectively, the propriety of the trial court's order denying the petition for a rule to show why an interlocutory *order,* mistakenly believed to be a final *judgment,* should not be opened. Hence, we have no occasion to direct appellant to praecipe judgment in this case.

The foregoing provides adequate grounds upon which to affirm the trial court. However, we deem it appropriate to set forth additional grounds upon which the denial of appellant's petition could have been sustained, had the petition been filed and denied after a final judgment had been entered in accordance with Pa.R.C.P. 1905(b) and Pa.R.C.P. 227.4.

### III. INAPPLICABILITY OF THE RULE TO SHOW CAUSE

John Melvin filed a rule to show cause why an interlocutory order, *i.e.* the grant of a protection from abuse order, should not be opened. The trial court found that such a rule was not a proper vehicle to seek such relief because timely post-verdict motions had not been filed. We agree.

John Melvin argued that under *Wood v. Garrett,* 353 Pa. 631, 46 A.2d 321 (1946) and *Horning v. David,* 137 Pa.Super 252, 8 A.2d 729 (1939), a trial court may grant a new trial in its discretion when, after a trial in absence of a non-appearing defendant, cause is shown to open the judgment to permit the defense. He argued further that a rule to show cause was the proper vehicle to bring the issue before the court in order to have the court exercise its discretion. He cited *Carey v. Carey,* 121 Pa.Super. 251, 183 A. 371 (1936), in support of that proposition. Review of those authorities,

however, reveals that they do not support John Melvin's claim.

In *Wood v. Garrett, supra,* a defendant filed a *timely motion for a new trial* following a trial conducted in her absence under Pa.R.C.P. 218. Our Supreme Court affirmed the denial of the request for a new trial finding that her excuse for non-appearance was not supported by the record, and alternatively, because no meritorious defense appeared. Here, no timely post-verdict motion for a new trial was filed. Moreover, the entire tenor of the opinion in *Wood v. Garrett* is directly contrary to John Melvin's claim on appeal, and provides no support for the proposition urged by him on appeal.

Both *Horning v. David, supra,* and *Carey v. Carey, supra,* involve orders granting a rule to show cause why judgment entered in the petitioner's absence should not be opened. However, on close inspection neither case supports John Melvin's claim here.

In *Horning v. David, supra,* the judgment was opened upon timely demonstration that summons had not been served on the defendant until *after* the verdict against him had been rendered. The ground stated as the basis upon which to *open* was inadequacy of notice, *which sought in actuality to strike the judgment as void, rather than to have it opened as a matter of grace.*

Likewise, in *Carey v. Carey, supra,* a court granted a rule to show cause why a divorce decree should not be struck as void when no notice was given to the wife of the divorce proceedings, and when the husband had committed extrinsic fraud to prevent his wife from learning of the divorce proceedings so as to defend. Again, *the rule sought to strike the judgment as being void, rather than to open judgment as a matter of grace.*

The only other case which we have discovered on this obscure point is *Mazi v. McAnlis,* 365 Pa. 114, 74 A.2d 108 (1950). In *Mazi,* plaintiff's counsel, but not plaintiff, appeared at the time appointed for trial. The trial court then

ordered that a directed verdict be entered for the defendant. In *timely post verdict motions*, new counsel moved to have the directed verdict stricken, and requested a new trial. The directed verdict was struck, as a judgment *non pros* was the appropriate disposition for the failure of the plaintiff to proceed at the time appointed for trial. Because it was uncontested that plaintiff's failure to appear was the result of plaintiff's sincere but erroneous belief that a continuance had been granted as the result of his discharge of prior counsel, plaintiff was deemed not to have been at fault. The trial court, consequently, *exercised its discretion to grant a new trial on equitable grounds.* Our Supreme Court, noting the trial court's broad discretion to grant new trials, found no abuse of discretion and affirmed.

In *Mazi v. McAnlis*, as in *Wood v. Garrett*, the question of whether the trial court should exercise its discretion to grant a new trial to permit defense arose in the context of a *timely motion* for a new trial, rather than a petition to open or a rule to show cause why judgment should not be opened. Such was not the case here, as no timely post-verdict motions were filed.

 From the foregoing, we conclude the following. Judgment entered following a trial held under Pa.R.C.P. 218, but without proper notice to one of the parties, may be struck as void on proper post-judgment petition. *Horning v. David, supra; Carey v. Carey, supra.* When a defendant receives proper notice and nonetheless fails to appear or provide a satisfactory excuse for non-appearance at, or prior to, the time set for trial, the trial may proceed properly in the defendant's absence. *Wood v. Garrett, supra;* Pa.R.C.P. 218. Following an adverse verdict in such proceedings, a defendant may file post-verdict motions which may include a request for a new trial on equitable grounds similar to those which permit the opening of a default or confessed judgment. *Mazi v. McAnlis, supra; Wood v. Garrett, supra;* Pa.R.C.P. 1905(b); Pa.R.C.P. 227.1(a)(1). The failure to file post-verdict motions waives any claims which could have been raised in such motions. Pa.R.C.P. 1905(b); Pa.R.C.P. 227.1(b)(2); *see e.g. Lucia v. Lucia,*

*supra.* Moreover, as a general rule, a rule to show cause may not be used in substitution for a remedy or procedure which provides the same relief sought by the rule. *See generally* 3 *Standard Pennsylvania Practice 2d* §§ 15.16, 15.39 (1981 & 1989 supp.) (collecting cases). Hence, at least in the circumstances presented here, a rule to show cause why judgment should not be opened would not be a proper vehicle by which to pursue appellant's request for a new trial on equitable grounds, as such relief could have been requested in a timely post-verdict motion.

Like the trial court, we find no authority for John Melvin's implicit assumption that after failing to appear at trial, and failing to seek a new trial as a matter of grace in timely post-verdict motions, a defendant may nonetheless compel the exercise of a trial court's presumed discretion to open a then final judgment *via* a rule to show cause why judgment should not be opened asserting equitable grounds.[9] Hence, we agree with the trial court that a rule to show cause was not a proper vehicle for pursuing the relief sought.

In summary, we emphasize that, under the circumstances presented here, relief must be sought, if at all, by a *timely* post verdict motion for a new trial assigning equitable grounds, which would then be left to the sound discretion of the trial court. When, as here, there was no defective notice giving rise to grounds to *strike*, we find allowance of a post-verdict motion for a new trial to be a more than sufficient avenue for such relief, and find no reason, as well as no authority, to add another avenue of relief such as attempted here.

## IV. INADEQUACY OF THE PETITION FILED

We deem it appropriate to note as well, the inadequacy of the petition for a rule to show cause filed in this case. The defects were multiple.

**9.** While there is abundant authority regarding the manner in which a default or confessed judgment should be opened, we do not find judgment entered following a trial in the defendant's absence under Pa.R.C.P. 218 to be sufficiently analogous to warrant reliance upon such authorities.

18

Assuming, *arguendo*, that in exceptional circumstances (*e.g.* had an unrepresented defendant been in a coma from the time set for trial through the period for filing post-verdict motions) a rule to show cause why judgment should not be opened *could* proceed in a manner similar to that followed in cases seeking to open a *default* judgment, the petition for issuance of a rule to show cause would still properly be refused if submitted in the same form as was the petition here. The petition for the rule filed in this case was *materially* inadequate on its face.

 Even under Pa.R.C.P. 2959, a petitioner seeking to open a *default* judgment must establish *prima facie* grounds to open judgment before a rule to show cause may issue to compel a response. Pa.R.C.P. 2959(b). Such a *prima facie* showing of entitlement must include a demonstration that:

1) the petition to open was timely filed;

2) the default can be reasonably explained; and,

3) facts in support of a proper defense are alleged.

*See Schultz v. Erie Ins. Exchange*, 505 Pa. 90, 93, 477 A.2d 471, 472 (1984); *Zellman v. Fickenscher*, 452 Pa. 596, 598, 307 A.2d 837, 838–39 (1973).

 The petition to open in this case was not filed until 34 days after the order sought to be opened (which was erroneously believed to be a final judgment) was entered. There was no explanation whatsoever provided for why the petition to open was not filed in a more timely manner. This delay was unreasonable, given the fact that the petitioner knew of the order sought to be opened the day it was entered. *See Zellman v. Fickenscher, supra.* We note that the transcript of the hearing on May 26, 1989, fails to disclose any oral petition to open, or any statement whatsoever by John Melvin to the trial court at that time. (N.T. 5/26/89 at 4–5).

Whether the tardiness was three minutes as John Melvin asserts, or thirty minutes as Eileen Melvin responds, is of no consequence. The critical fact with respect to the second

prong of the test set forth above, is that, to date, John Melvin has never offered even the barest semblance of an explanation for his tardiness. *See Schultz v. Erie Ins. Exchange, supra.* We note that our Supreme Court has strongly suggested that even ten minutes tardiness in a *civil* action could properly result in a loss of rights by parties who fail to be "obedient" to the trial court's scheduling orders. *See Commonwealth v. Carson,* 510 Pa. 568, 572, 510 A.2d 1233, 1234 (1986) (contrasting civil and criminal matters).

Finally, the petition's only reference to the existence of a meritorious defense is the bare assertion, verified on "information and belief," that "defendant did not commit the acts alleged in plaintiff's petition." While John Melvin's unsworn verification on information and belief constitutes an "affidavit" as that term is defined in Pa.R.C.P. 76, such an affidavit would provide an insufficient basis to warrant the issuance of a rule to show cause why final judgment should not be opened.

Where a trial has been conducted and a verdict rendered, it would be anomalous to require *less to open judgment,* than would be required *to resist a motion for summary judgment, i.e.* an affidavit on *personal knowledge* demonstrating *competent evidence* to support the averments in opposition to summary judgment with admissible evidence. *Cf.* Pa.R.C.P. 1035(d). Such affidavits serve essentially as offers of proof. There would be no reason to even require a response to a petition to open a judgment entered following a trial under Pa.R.C.P. 218, unless an adequate proffer had been made. Here, the proffer made was plainly inadequate.

John Melvin asserted that he:

has alleged enough facts in his Petition to establish the trial court's jurisdiction over the matter. Thus, a Rule to Show Cause *must* issue *as a matter of course* and John Melvin will then have the opportunity to present his case, *i.e.* reasons for tardiness, defense on the merits, etc. The

trial court can then exercise its discretion in granting or denying the relief requested in John Melvin's Petition. (Appellant's Brief at 8). (Emphasis added). He is mistaken.

A *prima facie* demonstration of grounds to open judgment is an indispensable prerequisite to even the issuance of a rule to show cause in a default case where no trial was conducted. *Cf.* Pa.R.C.P. 2959(b). Surely, no less could be required following a trial conducted under Pa.R.C.P. 218. Indeed, to establish sufficient grounds for issuance of a rule to show cause to open a Pa.R.C.P. 218 judgment, the facts asserted in the petition not only would have to establish prima facie entitlement to the relief sought (*e.g.* opening of judgment), but would also have to be supported by *at least* an affidavit of the petitioner or another witness, *on personal knowledge*, in support of those assertions. *See* 3 *Standard Pennsylvania Practice 2d* 15:40 (1981 & 1989 supp.) (noting that a petition for a rule to show cause must be supported by affidavits) (collecting cases); *cf.* Pa.R.C.P. 1035(d).

The petition for the rule filed here failed to aver facts establishing a *prima facie* showing of entitlement to the relief sought (*i.e.* the opening of judgment), and the averments made in the petition were not accompanied by an adequate supporting affidavit. Hence, even if the rule had been filed after judgment was entered, and even if the issuance of a rule were permissible in such a case, the petition for a rule to show cause would still have been denied properly here.

## CONCLUSION

Based upon the foregoing, we find no merit in John Melvin's appeal.

Order Affirmed.

DEL SOLE, J., concurred in the result.