**FIRST UNION MORTGAGE CORP., Appellee,**

v.

**Steven FREMPONG, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 25, 1999.
Filed Dec. 31, 1999.
Reargument/Reconsideration
Denied March 3, 2000.

Steven Frempong, appellant, pro se.

Frank Federman, Philadelphia, for appellee.

Before JOYCE and LALLY–GREEN, JJ., and CIRILLO, President Judge Emeritus.

CIRILLO, President Judge Emeritus:

¶ 1 Steven Frempong appeals *pro se* from an order entering an *in rem* judgment in favor of First Union Mortgage Corporation for the unpaid balance on his mortgage plus interest, a total of $62,-591.69, together with all other costs and charges associated with foreclosure and sale of the property. This case, involving an otherwise unremarkable mortgage foreclosure action, presents a cautionary tale regarding outrageous abuse of our legal system in order to delay collection of a debt. We affirm and direct the trial court to assess First Union's costs of this appeal against Frempong.

¶ 2 Initially, we observe that the facts as stated in Frempong's *pro se* brief are unintelligible, and those in First Union's are but cursory and factually incomplete. After having examined the record, we sympathize with the court's and First Union's frustration with this case, but we cannot countenance such inadequate briefing. In order for the issues raised on appeal to take on even a semblance of meaning to us, we must be presented with a clear statement of the facts, and it is a waste of precious judicial resources for us to have to assemble such an account ourselves. The following recounting of this case's history is gleaned directly from the certified record on appeal.

¶ 3 On April 22, 1985, Frempong, as mortgagor, executed a first mortgage on his real property at 8414 Fayette Street in Philadelphia, held by First Union Mortgage Corporation, as mortgagee, in the amount of $23,000.00. In January of 1992, he stopped making monthly payments on the mortgage. Six months later, First Union sent him notice of the amount necessary to cure the default, together with notice that if he failed to do so within a month, it would accelerate the mortgage. Frempong failed to cure the default. Thus, First Union filed a complaint against him in October of 1992, alleging his default on the mortgage. At that time, First Union demanded a total of $20,105.36, plus additional interest, fees, and costs to be calculated. Frempong filed preliminary objections based on defective service; these were denied, and he filed his answer.

¶ 4 Frempong executed a deed purportedly conveying 10% of the subject property to Information Management Group, Inc., 15% of it to F.A. Properties Corp., and 75% to himself. It appears Frempong formed and ran these two corporate entities.

¶ 5 In July of 1993, Frempong admitted his non-payment of the mortgage to the trial court, which then granted summary judgment for First Union in the amount of $23,658.32, an amount including the additional interest, fees, and costs requested by First Union, calculated as of July 17, 1993. Thereafter, First Union obtained its first of what were to be many Writs of Execution, directing the Sheriff of Philadelphia County to levy upon and sell the property at a Sheriff's sale to satisfy the judgment.

¶ 6 Several days later, Frempong filed his first notice of removal to the United States District Court for the Eastern District of Pennsylvania based on diversity of citizenship, claiming denial of due process in the common pleas court due to the alleged defective service. This temporarily stayed the Sheriff's sale. In response, First Union filed in the federal court a

motion to remand, noting that the amount in controversy was under the jurisdictional amount of $50,000.00. Frempong responded that the property's market value was above this amount. The Honorable Donald W. VanArtsdalen, Judge of the District Court, issued an order essentially agreeing with First Union, citing the then-recent case of *Sears Mortgage Corp. v. Atuahene,* 828 F.Supp. 368 (E.D.Pa.1993), another mortgage foreclosure removal case from Philadelphia, for the proposition that the amount sought to be collected on the mortgage, not the property value, is the amount which must be above $50,000.00 for diversity jurisdiction to apply. In citing that case, Judge VanArtsdalen noted First Union's allegation that Atuahene, the defendant in the *Sears* case, and Frempong were in fact the same individual, utilizing different names but the same ineffective removal strategy in two different mortgage foreclosure actions involving two different properties. As had the Honorable J. Curtis Joyner in *Sears, supra* at 370, Judge VanArtsdalen remanded the case to the Philadelphia Court of Common Pleas and ordered Frempong to pay "all costs and additional expenses, including attorneys' fees, incurred as a result of the improper removal." The case was remanded and the record returned by December of 1993.

¶ 7 Meanwhile, in October of 1993, Frempong had also filed a petition for bankruptcy under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Pennsylvania at docket 93–16296–BIF, utilizing the corporate name of Information Management Group, Inc. (IMG) and further staying the foreclosure. The following month, the Honorable Diane Sigmund of that court dismissed IMG's petition.

¶ 8 The common pleas court's Writ of Execution was re-issued in February of 1994, together with a supplemental list of judgment creditors with record liens against the property, including the City of Philadelphia, the Department of Public Welfare, the Internal Revenue Service, and the holder of a second mortgage, Continental Bank. Later that month, an outstanding prior petition of First Union to join the United States as party defendant was granted. First Union had found that Frempong, under the name of Steven Atuahene, owed substantial unpaid Federal taxes, and that a tax lien had been entered against the subject premises for approximately $75,000.00.

¶ 9 In February of 1994, First Union for the first time petitioned the common pleas court to reassess damages. It stated that the interest, escrow balance deficit, late charges, and attorneys' fees had continued to accrue under the terms of the mortgage contract, and it sought to add approximately $2,000.00 to the prior amount. Shortly thereafter, the Honorable Russell M. Nigro, now a Justice of our supreme court but then sitting as a judge in the Philadelphia County Court of Common Pleas, issued a succinct order requesting from First Union within 30 days all documentation necessary for his decision. Although First Union filed a response to this request, it only included a copy of the mortgage in very fine print. Therefore, in June of 1994, Judge Nigro issued an order stating that if First Union did not supply to the court within 30 days copies of the following, its petition would be dismissed:

A. Copy of Mortgage Foreclosure Judgment.

B. Relevant mortgage terms and conditions. Specifically, where petitioner is seeking post-judgment interest and/or post-judgment escrow deficit, petitioner must *highlight* the mortgage provision which evidence the parties' intent to preserve the effectiveness of those provisions post-judgment. Failure to highlight the provision which allows for post-judgment interest at a higher rate than the 6% statutory rate and/or the provision which allows for an escrow deficit will result in dismissal of said petition.

C. Petitioner must highlight the provision of the documentation substantiating request for attorney fees.

D. If petitioner requests compensation for *any* item [to which] this court determines petitioner is not entitled, the entire petition will be denied.

After the deadline had passed without a response from First Union, Judge Nigro denied First Union's petition to reassess damages due to its failure to comply with his June, 1994 order.

¶ 10 At some point in 1994, it appears Frempong filed for Chapter 11 bankruptcy again, for in August of 1994, the United States Bankruptcy Court, per the Honorable Bruce I. Fox, issued an order dismissing an action at 94–12675–BIF, demanding that "Stephen Frempong–Atuahene" pay fees to the United States Trustee.

¶ 11 Four months later, again facing a Sheriff's sale, Frempong filed yet another Chapter 11 bankruptcy action, this time under a non-hyphenated version of his name, at docket 94–18000–BIF.[1] In March of 1995, the United States Bankruptcy Court dismissed the case and ordered "Stephen Frempong Atuahene" again to pay fees to the Trustee in Bankruptcy.

¶ 12 In another four months, and in the face of another Sheriff's sale, Frempong yet again filed for Chapter 11 bankruptcy, this time using the name of F.A. Management Group, at docket 95–15226–BIF. The action was dismissed in October of 1995.

¶ 13 After another four months had passed, Frempong once more filed for Chapter 11 bankruptcy, this time under the name of F.A. Realty Investors, at docket 96–11363–BIF. This stayed yet another scheduled Sheriff's sale. The action was dismissed in April of 1996.

¶ 14 Frempong waited only three months before again filing for bankruptcy, using again the name of F.A. Management, at docket 96–16049–BIF. Judge Fox of the bankruptcy court dismissed the action within two months, and on October 2, 1996, growing weary of our persistent Appellant, he amended his September dismissal to state:

> F.A. Management Group, Inc., a/k/a Information Management Group, Inc., or any successor-in-interest are hereby prohibited from filing or refiling bankruptcy for a period of 180 days.

¶ 15 In March of 1997, the Writ of Execution was re-issued in the common pleas court, again in the original amount of approximately $23,000.00, scheduling the premises for Sheriff's sale.

¶ 16 The following month, First Union presented to the common pleas court a second petition to amend the judgment amount, seeking recalculated post-judgment interest, escrow deficit, and attorneys' fees, for a total judgment of $49,013.02. In its supporting memorandum, First Union explained that since Frempong had failed to pay taxes and insurance, it had advanced monies for these payments throughout the period of delay caused by Frempong's extensive meritless bankruptcy proceedings, in order to protect its interest in the property against a tax sale or fire. It also stated that the terms of the mortgage allowed it to charge these payments against Frempong's escrow account. First Union provided authority for the charging of attorneys' fees in such a situation, as well as for amending the judgment. This time, it included a copy of the mortgage with the relevant language highlighted. Frempong's answer relied upon Judge Nigro's earlier denial of First Union's first petition to amend.[2]

---

1. The Court of Common Pleas re-issued the Writ of Execution later that month, but the next day First Union stayed it, noting the existence of the pending bankruptcy action.

2. Interestingly, in his response, Frempong attached myriad documents from a separate but quite similar case, *Federal Home Loan Mortgage Corporation v. Steve Frempong a/k/a Steve Atuahene a/k/a Stephen Atuahene–Frem-*

The Honorable Pamela Pryor Cohen denied First Union's petition.

¶ 17 In September of 1997, Frempong once more filed for bankruptcy under the name of F.A. Management Group, Inc., at docket 97–30862–BIF. Judge Fox's dismissal the following month additionally orders: "Debtor shall not file or cause to be filed any bankruptcy in any jurisdiction for one year from the date of this order."

¶ 18 One month later, First Union again had the Writ of Execution re-issued, listing the property for Sheriff's sale. However, Frempong evaded service. An order permitting alternate service by regular and certified mail at the subject property address was entered in January of 1998, upon First Union's request, after many other methods of service utilizing Frempong's many individual and corporate names and addresses had failed.

¶ 19 First Union then filed a third motion to increase the judgment amount, this time in the form of a motion to vacate the common pleas court's initial 1993 summary judgment order. It therein also stated for the first time that Frempong's filing of a blizzard of baseless bankruptcy actions had served substantially to delay the action and to increase the costs of collecting the money it was due.

¶ 20 The following month, still under prohibition against resorting to his habit of bankruptcy filings, Frempong again delayed the scheduled Sheriff's sale by recalling his original tactic; he filed a second *pro se* notice of removal to the U.S. District Court. In this notice, he stated that he had filed suit at federal docket # 98–CV–865 and 866, and that the suit alleged that, by attempting to collect the money it was due, First Union had violated federal laws and Frempong's constitutionally guaranteed civil rights.

¶ 21 The late Robert S. Gawthrop, III of that court responded that, since the time of Frempong's first attempt at removal, the amount in controversy for federal diversity jurisdiction to be proper had been changed to $75,000.00. However, even with the expenses that had been added to the debt due to Frempong's delay tactics, the amount claimed by First Union was still only $49,013.02, well below the necessary amount. He also noted that, since the case was then six years old, it had not been removed to federal court on the basis of diversity jurisdiction as promptly as is required by federal statute. Judge Gawthrop thus granted First Union's motion for remand to the common pleas court.

¶ 22 First Union's third motion to increase the amount of the judgment, filed earlier, was then scheduled for a hearing before the Honorable Pamela Pryor Dembe. On July 15, 1998, following oral argument, of which we have no transcript, Judge Dembe granted First Union's motion to vacate and directed that a hearing for assessment of the amount due First Union was to be held. First Union has informed us that Frempong failed to appear for the July 15, 1998 oral argument despite the fact that notice thereof was sent well in advance to his record address.

¶ 23 Accordingly, a status conference was held in early August of 1998 in the Complex Litigation Center. Once again, Frempong did not appear despite the fact that prompt notice was sent to his record address. There, the Honorable Victor J. DiNubile put in place a pre-trial scheduling order for the assessment of damages and trial, setting a mandatory settlement conference for December 16, 1998 and a trial for December 28, 1998. As Frempong had not been present, First Union sent Frempong two copies of the scheduling order containing these dates; it sent one via regular and one via certified mail

pong, filed at Philadelphia County Court of Common Pleas May Term 1990, No. 2320, in which $82,175.07 was sought to be collected on a different mortgage on a different property. It appears this case involved a third prop-

erty, one different than that discussed in the *Sears* case earlier cited by Judge VanArtsdalen. *Sears, supra.* A pattern was beginning to emerge.

to his record address. The letter sent via regular mail was not returned to counsel for First Union, but the certified letter was later returned as unclaimed.

¶ 24 On August 14, 1998, Frempong filed a *pro se* appeal from Judge Dembe's order of July 15, 1998. We quashed that appeal as interlocutory on November 24, 1998.

¶ 25 On December 16, 1998, therefore, the mandatory settlement conference was held. However, Frempong again failed to appear. Consequently, pursuant to Pennsylvania Rule of Civil Procedure 218(c), Judge DiNubile on December 28, 1998 signed an order that an *in rem* judgment was to be entered against Frempong in the amount of $62,591.69, together with yet-to-be-calculated post-judgment interest, costs, and fees. The order was entered on the docket on December 31, 1998. It is from the aforementioned order that Frempong appealed *pro se* on January 29, 1999.[3]

¶ 26 On appeal, Frempong presents the following issues for our consideration:

A. Whether the [C]ourt of [C]ommon [P]leas of Philadelphia County erred and abused its discretion when it vacated a 1993 final judgment and ordered a new trial.

B. Whether the lower court erred and abused its discretion in granting judgment of December 28, 1998 and in refusing to consider defendant's motion to vacate and/or strike default judgment.

C. Whether the lower court lacked jurisdiction in this instant case and erred in exercising jurisdiction.

D. Whether appellee's actions are violative of appellant's constitutional rights.

E. Whether the decision of the Court of Common Pleas of Philadelphia County conflicts with applicable decisions of this Court.

¶ 27 Before considering the issues as stated, we find it necessary to resolve several preliminary points. Initially, we observe that throughout his brief and reproduced record, Frempong has attempted to place before this court alleged facts which are contained nowhere in the certified record. This is improper, and we have disregarded any such allegations. "It is a well settled principle that appellate courts may only consider facts which have been duly certified in the record on appeal." *Commonwealth v. Bracalielly*, 540 Pa. 460, 475, 658 A.2d 755, 763 (1995). *See* Pa.R.A.P. 2152 (reproduced record shall only contain parts of the original record).

¶ 28 A *pro se* litigant is granted the same rights, privileges and considerations as those accorded a party represented by counsel; however, *pro se* status does not entitle a party to any particular advantage because of his or her lack of legal training. *Triffin v. Janssen*, 426 Pa.Super. 57, 626 A.2d 571, 573 (1993). Although it would be within our power to do so, we shall not quash this appeal, for the issues are reviewable from the materials contained in the certified record; thus, the defects caused by Frempong's improper interpolations are not substantial. *See* Pa.R.A.P. 2101 ("if the defects in the brief . . . of the appellant are substantial, the appeal or other matter may be quashed or dismissed."). *See also Commonwealth v. Delligatti*, 371 Pa.Super. 315, 538 A.2d 34, 41 (1988), citing *Commonwealth v. Sanford*, 299 Pa.Super. 64, 445 A.2d 149, 150 (1982) ("When issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific is-

3. His appeal was thus timely. We note that prior to filing his notice of appeal, on January 14, 1999, Frempong had filed a self-styled "motion for extension of time to file a motion for reconsideration." The trial court did not consider this motion. Immediately after filing his notice of appeal, on February 1, 1999, Frempong filed a motion to strike and/or vacate the trial court's order. The 30 th day following the December 31, 1998 entry of the order on the docket fell on a Sunday; thus, Monday, February 1, 1999, was the next business day.

sues for review, a court will not consider the merits thereof.").

■ ¶ 29 Moreover, although Frempong never explicitly so states, the fact that he has attempted to place such extraneous material before us itself implies his claim that the findings of fact of the trial court are incorrect. Our standard of review of proceedings such as the present is whether the trial court's findings are supported by "competent and sufficient" evidence. *Fierst v. Commonwealth Land Title Ins. Co.*, 499 Pa. 68, 73–74, 451 A.2d 674, 676–77 (1982). Without going over them here in all their specificity, after examining both the record and the findings of the trial court, we specifically hold that its findings are based upon more than sufficient evidence.

¶ 30 Finally, we wish to note Frempong's bald and outrageous statement within his argument of his first issue that First Union is "motivated by sheer greediness and racial discriminatory animus." Other than this statement, the point is completely undeveloped. We find no support whatsoever for it. It is not the function of this court to consider and respond to vacuous claims. *Delligatti, supra* at 41. Accordingly, we do not examine this spurious issue, which is an utter waste of precious judicial resources.

■ ¶ 31 In his first issue, Frempong queries whether the common pleas court abused its discretion when on July 15, 1998, Judge Pamela Pryor Dembe vacated the 1993 summary judgment order and ordered a recalculation of damages in a new trial. In support of his contention that the court erred, he initially argues that the 1993 summary judgment order was a final, appealable order, and that First Union failed to appeal or request reconsideration of it.[4] We acknowledge that where no parties or claims remain, an

order granting summary judgment is considered final, as per Pennsylvania Rule of Appellate Procedure 341(b)(1), and that 42 Pa.C.S. § 5505 establishes a 30–day time limit for a trial court to modify or rescind any final order. *Mente Chevrolet, Oldsmobile, Inc. v. Swoyer*, 710 A.2d 632 (Pa.Super.1998). However, it is also well established that where there is a showing of fraud or another circumstance "so grave or compelling as to constitute 'extraordinary cause' justifying intervention by the court," such as the present profusion of dilatory tactics, then a court may open or vacate its order after the 30–day period has expired. *Justice v. Justice*, 417 Pa.Super. 581, 612 A.2d 1354, 1357 (1992) (*quoting Simpson v. Allstate Ins. Co.*, 350 Pa.Super. 239, 504 A.2d 335, 337 (1986)). As our supreme court has stated:

> After said appeal time has expired, the doctrine of *res judicata* becomes applicable and the order may not be vacated. *Love v. Temple University*, [422 Pa. 30, 220 A.2d 838 (1966) ]. This general rule, however, is by no means absolute.
>
> In *York v. George*, 350 Pa. 439, 39 A.2d 625 (1944), we held that the general rule may be disregarded and an unappealed judgment opened if fraud or other equitable considerations required the granting of such relief. *See Fredley v. Crandall Filling Machinery, Inc.*, [234 Pa.Super. 530] 342 A.2d 757 ( [Pa.Super.] 1975). As our Superior Court has stated in *Great American Credit Corp. v. Thomas Mini–Markets, Inc.*, [230 Pa.Super. 210] 326 A.2d 517, 519 ( [Pa.Super.] 1974), "Where equity demands, the power of the court to open and set aside its judgments may extend well beyond the term in which the judgment is entered."

*Estate of Gasbarini v. Medical Center of Beaver Cty., Inc.*, 487 Pa. 266, 270, 409 A.2d 343, 345 (1979). Beyond the shadow

---

4. As part of his argument on this first issue, citing well-established law regarding reconsideration of final orders prior to appeal, Frempong attempts to show that it was improper for the court to grant reconsideration and recalculation of damages of·its final order. This is a mischaracterization of First Union's third petition to amend the judgment, which was not an untimely petition for reconsideration.

of a doubt, equity demanded at least the opening of the judgment in this extraordinary case of abuse of our legal system. The delay and consequent expense borne by First Union were entirely chargeable to Frempong both due to his dilatory tactics and also due to the terms of the mortgage to which he had agreed. By the time the trial court had vacated its prior summary judgment, the amount stated in its original order no longer in any way reflected the costs to First Union of collecting the money owed to it, although that had been the original intent of the court in entering the order. Frempong's actions throughout this case have demonstrated utter contempt for the law. In light of his outrageous conduct, we are more than satisfied that the trial court neither erred nor abused its discretion in taking the relatively mild step of vacating its prior order and scheduling a hearing to assess First Union's actual damages. *Estate of Gasbarini, supra.*

¶ 32 In Frempong's second issue, he claims the trial court erred both in granting judgment against him following his failure to appear for the mandatory settlement conference, and in refusing to consider his motion to vacate and/or strike. In support of this second issue, he makes several arguments, the first an allegation to us that he had no notice of the December 16, 1998 mandatory settlement conference and the December 28, 1998 trial date. The trial court, however, has specifically found that he had four months' notice of those dates, and we have already found the trial court's findings amply supported, including this one.[5]

¶ 33 Since Frempong had notice that he was under an obligation to appear for the mandatory settlement conference, his failure to do so triggered the provisions of Rule of Civil Procedure 218. Pa.R.C.P. 218, 42 Pa.C.S. Although that Rule's explicit provisions allow a plaintiff to proceed to trial only when a defendant has failed to appear for a *trial* without satisfactory excuse, the Rule also applies, through case law, to conciliatory or pre-trial consequences. *Anderson v. Pennsylvania Fin. Responsibility Assigned Claims Plan,* 432 Pa.Super. 54, 637 A.2d 659 (1994). There was thus no abuse of discretion in the trial court's granting judgment against Frempong on the trial date after finding Frempong had been absent from the mandatory settlement conference without satisfactory excuse.

¶ 34 Moreover, after the trial court took action but prior to taking his appeal, Frempong did not file a post-trial motion to strike or a petition to open judgment alleging the reason(s) he had failed to appear. *See* Pa.R.C.P. 218, "Note" ("A decision of the court following a trial at which the defendant failed to appear is subject to the filing of a motion for post-trial relief which may include a request for a new trial on the ground of a satisfactory excuse for the defendant's failure to appear."), *Melvin v. Melvin,* 398 Pa.Super. 1, 580 A.2d 811 (1990) (same). Rather, he filed this immediate appeal. Any reason he might have had for not appearing at the settlement conference has, therefore, not been preserved for our review. This failure is chargeable to Frempong. *Anderson, supra.*

¶ 35 Frempong also argues, under the heading of his second issue, that the

---

5. Judge Pamela Pryor Dembe's order of July 15, 1998 put Frempong on notice that a hearing would be scheduled at the Complex Litigation Center. Although Frempong was not present at oral argument before Judge Pryor Dembe, he did appeal her order to this court and thus clearly received it. In August, First Union sent to his address via both regular and certified mail two copies of the pre-trial scheduling order, and the regular mail copy was not returned. Frempong has a history in this case of evading service, and First Union had therefore been granted alternate service. There is simply no abuse of discretion in the trial court's finding that Frempong received adequate notice, and we find Frempong's questioning that point to be another example of his extraordinary achievements in the field of dilatory tactics.

trial court erred because it acted without jurisdiction on December 28, 1998, since his appeal of Judge Dembe's July order was still pending at that time. We quashed that appeal as interlocutory in November of 1998. Moreover, Frempong had taken an appeal from an interlocutory order. A trial court is permitted to proceed further under such circumstances. Pa.R.A.P. 1701(b)(6). This argument is, therefore, of no merit and is, indeed, frivolous.

¶ 36 Frempong further argues that the court acted without authority because he had filed yet another bankruptcy proceeding involving F.A. Management Group, Inc. It is true that the Bankruptcy Court's one-year prohibition against Frempong, Atuahene, Frempong–Atuahene, or any of his corporate entities filing for bankruptcy had expired in October of 1998. It is also true that Frempong alleged that on December 18, 1998, he had filed yet another bankruptcy petition. Frempong, however, did not inform the trial court that he had filed this bankruptcy petition until well after that court had issued and docketed its December, 1998 order. Frempong's allegation regarding the most recent of his bankruptcy petitions is found in his motion to strike and/or vacate the trial court's judgment order, which he filed on February 1, 1999.

■■■ ¶ 37 Additionally, the bankruptcy petition had nothing to do with the trial court's jurisdiction. Only the bankruptcy debtor, here F.A. Management Group, Inc., receives the benefit of an automatic stay of all proceedings in a Chapter 11 bankruptcy. 11 U.S.C. § 362. Frempong is the only individual named on the mortgage. It is true that Frempong has deeded a percentage of his interest in the property to F.A. Management Group, Inc. However, once a foreclosure has been commenced, any person or entity acquiring an interest in the property will be bound by decree and need not be joined. *Resolution Trust Corp. v. Warwick Nurseries,*

*Ltd.,* 450 Pa.Super. 200, 675 A.2d 730 (1996). The bankruptcy status of F.A. Management Group, Inc., not a party to the instant action or mortgage, is thus irrelevant to the present action.

■■■ ¶ 38 Still under the guise of his second issue, Frempong next argues that the trial court abused its discretion by failing to consider his self-styled "motion for extension of time to file a motion for reconsideration," filed on January 14, 1999. The trial court would only have abused its discretion, however, had it considered that motion, since no trial court has jurisdiction to extend the 30–day period for the filing of an appeal or reconsideration application. *See* Pa.R.A.P. 903 (time for appeal); 1701 (reconsideration process explained). *See also Valley Forge Ctr. Assocs. v. Rib–It/K.P., Inc.,* 693 A.2d 242, 245 (Pa.Super.1997) (30–day period must be construed strictly and may only be tolled by a timely order "expressly granting" reconsideration, upon application therefor). This, too, is a frivolous issue.

■■■ ¶ 39 Frempong's last sub-claim under his second issue is that the trial court erred by failing to consider his motion to strike and/or vacate, which he filed on February 1, 1999. The motion is not of record.[6] However, since it was docketed, we have examined the copy in the reproduced record. It contains no excuse for his failure to appear and is thus not a motion for post-trial relief of the sort mentioned in Rule of Civil Procedure 218, as discussed above. In any event, it was filed after his notice of appeal.

¶ 40 The provisions of Rule of Appellate Procedure 1701, which therefore govern the motion, provide that a trial court may only act in certain narrowly defined ways after an appeal is taken. Pa.R.A.P. 1701, 42 Pa.C.S. The only one of these potentially applicable to the motion at issue is that the court may grant reconsideration of a final order after an appeal has been filed, if two conditions are met: first, it must receive an application for reconsideration within 30 days of the entry of the

---

6. We cannot fathom why it is not included in the record, for it was entered on the docket.

order, and second, it must enter an order expressly granting reconsideration.

¶ 41 Here, it is not at all clear that the motion should be construed as one calling for reconsideration. Moreover, although it was timely filed, it would have required immediate trial court action on the same day. Frempong's motion to strike and/or vacate was filed on the next business day following the 30th day after the trial court's order was docketed; this was the last day the trial court had jurisdiction to act. However, even if the first condition for reconsideration was met, the second was not, for the trial court did not grant reconsideration. There was no error in the trial court's failure to grant reconsideration, and, thus, we can find no error in its failure to respond to the motion. Frempong's second issue, therefore, is utterly without merit.[7]

¶ 42 In his third issue, Frempong questions the jurisdiction of the court in three ways. We believe his first point is a reiteration of his first issue regarding the finality of the 1993 summary judgment order. As we have already stated, there was no error or abuse of discretion in the trial court's vacating Judge Cohen's summary judgment order. His second jurisdictional point is a repetition of his point that his appeal which we quashed as interlocutory had divested the trial court of jurisdiction to act. As explained above, such preclusion does not pertain to appeals taken from interlocutory orders. Pa. R.A.P. 1701(b)(6). His third jurisdictional point is a repeat of the most recent bankruptcy claim resolved above as part of issue two. We find his third issue repetitious and a waste of our time.

¶ 43 His fourth query is whether First Union and/or the Philadelphia Court of Common Pleas has violated his constitutional rights. He claims violations of his rights to substantive and procedural due process, free speech, and equal protection of the laws in an improper racial classification. We commend Frempong for his extensive quotations from monumental cases of the United States Supreme Court, setting forth the manner in which these precious rights are to be guarded. Aside from his oft-repeated claim regarding notice, he has in no manner explicated how these rights were allegedly violated. There is no merit to this underdeveloped issue.

¶ 44 Frempong's fifth issue is completely undeveloped. We refuse to consider it at all.

¶ 45 We are mindful of the fact that appellant is proceeding *pro se* in this appeal. Nevertheless, *pro s e* representation does not relieve appellant of his duty to properly raise and develop his appealable claims. We have previously stated:

While this court is willing to liberally construe materials filed by a *pro se* litigant, we note that appellant is not entitled to any particular advantage because he lacks legal training. As our supreme court has explained, "any layperson choosing to represent himself in a legal proceeding must, to some reasonable extent, assume the risk that his lack of expertise and legal training will prove his undoing."

*O'Neill v. Checker Motors Corp.*, 389 Pa.Super. 430, 567 A.2d 680, 682 (1989) (citations omitted). Appellant has chosen to proceed *pro se* and he cannot expect our court to act as his attorney. *See Commonwealth v. Sanford*, 299 Pa.Super. 64, 445 A.2d 149, 150 (1982) ("We decline to become appellant's counsel. When issues are

---

7. We find it particularly ironic that in the course of his second issue, Frempong quotes at length from the cases of *Anderson v. Pennsylvania Financial Responsibility Assigned Claims Plan*, 432 Pa.Super. 54, 637 A.2d 659 (1994) and *Green v. Harmony Housing Association*, 684 A.2d 1112 (Pa.Commw.1996). In the former, this court found no abuse of discretion in relying upon notice to a party in

imposing consequences when that party fails to appear, pursuant to Pa.R.C.P. 218. In the latter, our commonwealth court discussed extensively the doctrine that a *pro se* litigant assumes the risk that his lack of legal training will prove his undoing. Frempong states, without further support, that the cases are inapposite. He is incorrect.

not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review, a court will not consider the merits thereof.").

¶ 46 Courts should not tolerate legal maneuvers undertaken solely for improper purposes. *Hein v. Hein*, 717 A.2d 1053, 1056 (Pa.Super.1998) (where a party's action disrupts the fair and orderly process of the action, a court acts appropriately in imposing even severe sanctions if necessary to take control of the situation), *Winpenny v. Winpenny*, 434 Pa.Super. 348, 643 A.2d 677, 679 (1994) ("Abuse of the court system, whether by seasoned attorneys or by *pro se* parties, cannot be tolerated.").

¶ 47 We specifically find that Frempong's behavior in bringing this appeal was dilatory, obdurate, and vexatious, that the issues stated are frivolous, and that he took this appeal solely to delay repayment of the money he owes First Union. As we stated in 1994:

> By filing the present appeal seeking review of frivolous issues, Appellant has caused this court to waste precious judicial resources. Appellant's total disregard for the court system as a whole began in the trial court and has carried over to this court. We admonish Appellant for necessitating review of these claims and direct [his] attention to the many sincere appellants who seek review before this court.

*Commonwealth v. Appel*, 438 Pa.Super. 214, 652 A.2d 341, 343 (1994).

¶ 48 Therefore, we have no hesitation whatsoever in awarding attorneys' fees to First Union pursuant to Pa.R.A.P. 2744. That rule allows an award of attorneys' fees after a determination "that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious." *Township of South Strabane v. Piecknick*, 546 Pa. 551, 686 A.2d 1297 (1996). Upon remand, we direct the trial court to determine First Union's attorneys' fees and costs in taking

this appeal, and to add this amount to the judgment. Further delay should not be tolerated.

¶ 49 Order affirmed. Appellee's attorney fees to be borne by Appellant.