J-S19034-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: THE ESTATE OF LOUIS DICESARE, DECEASED | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: BRYAN DICESARE | : : : : : : | |
| | : | No. 2310 EDA 2021 |

Appeal from the Decree Entered October 5, 2021
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
2013-0751

BEFORE:   PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED JULY 11, 2022**

Appellant Bryan K. DiCesare appeals *pro se* from the Decree entered in the Court of Common Pleas of Lehigh County on October 5, 2021, which, *inter alia*, dismissed Appellant's "Objections to the First and Final Formal Account of David M. Roth, Esquire, Administrator D.B.N.C.T.A." filed on November 20, 2019.  Because Appellant's appellate brief is substantially deficient, we quash this appeal.

In its Pa.R.A.P. 1925(a) Statement, the orphans' court indicated that it had set forth the reasons for its dismissal of Appellant's Objections in its Adjudication filed on October 5, 2021, to which the Decree is attached. Although the facts are not relevant to our disposition, to place the instant

_____

[*] Former Justice specially assigned to the Superior Court.

appeal in context, we reproduce the orphans' court's recitation of the facts and procedural history herein as follows:

> The *First And Final Account of David M. Roth, Esquire, Administrator, D.B.N.C.T.A. of the Estate of Louis A. Dicesare, Deceased* (hereafter, "Account"), was presented to the [c]ourt for audit, confirmation and adjudication on November 15, 2019. Proof of notice thereof to all parties legally interested in said estate appears of record.
>
> The *Account* reflects a principal balance of $116,959.01; disbursements during administration of $88,367.03; and a balance in hand of $28,591.98 comprised of cash and tangible personalty.
>
> The *Petition for Adjudication/Statement of Proposed Distribution* seeks the [c]ourt's approval of: payment of $18,838.93,[1] representing compensation for guardian and/pr guardian ad litem services rendered to Linda A. DiCesare[2], beneficiary (hereafter "Linda"); the administration of certain tangible personalty[3] as probate property, and whether the outstanding Linda DiCesare estate administration expenses and estate recovery claim can be paid directly from her distributive share in this estate.
>
> On November 20, 2019, Bryan K. DiCesare (hereafter, "Bryan") filed Objections to the First And Final Account Of David M. Roth, Esquire, Administrator D.B.N.CT.A., (hereafter "Objections"). The prolix and repetitive 9 page Objections, are not consecutively numbered, and are directed to: the manner and sale of the decedent's real property, known as and located at 1526 Paxford Road, Allentown, Pennsylvania (hereafter "Property"); the sale and continued possession of certain tangible personalty; and the proposed payment of the administration expenses of Linda's guardianship and probate estate from the Louis DiCesare Estate. Bryan, who represented himself at the May 18, 2021 hearing upon the Objections, introduced no documentary evidence and presented no testimony other than his own statement. While Objector's
>
>> ...regrettable failure to conform to the rules of procedure and the law is most likely due to ...[his)... status as a pro se litigant, pro se litigants are not entitled to any advantage because of their lack of legal training. (*Trffen v. Jansssen*, 626 A.2.d 571, 573 (Pa.Super. 1993); see

> also *First Union Mortg. Corp. v. Frempong*, 744 A.2d
> 327, 337 (Pa. Super. 1999) ("any layperson choosing to
> represent himself in a legal proceeding must, to some
> reasonable extent, assume the risk that his lack of
> expertise and legal training will prove his undoing.")
> *Fluellen Estate* 9 Fiduc. Rep. 3d (O.C. Phila. 2019)

For the reasons set forth below, the Objections are denied.

The long and difficult history of this estate administration, which is inextricably bound to the equally contentious guardianship administration regarding Linda is well-documented[4] and will not be repeated in great detail here. During the period that he served as the personal representative of this Estate, as well as the successor guardian of the person of his incapacitated mother, and thereafter administrator of her probate estate, three fiduciary positions from which he was removed for cause,[5] Bryan did not obtain a caregiver exemption regarding Linda's 80% interest in the Property [6], and continued to reside there with his family. Bryan's failure to properly administer the Property was one of the primary reasons for his removal as Executor of this Estate on September 20, 2017. Thereafter, this [c]ourt found that the Property was a probate asset of Louis DiCesare, directed the Administrator d.b.n.c.t.a. to sell it "... in order to conclude the estate administration and effectuate distribution" and charged Bryan's 20% interest in the Property $35,056.28.[7] Bryan did not appeal the May 25, 2018 Order.

By *Order* entered August 30, 2018, this [c]ourt: granted the Administrator's Petition For *Citation To Show Cause Why A Decedent's Property Should Not Be Vacated* filed July 20, 2018; directed Bryan and his invitees to remove themselves and their belongings from the Property by September 17, 2018; and ruled that "... any tangible property left at 1526 Paxford Road, Allentown, Pennsylvania shall be deemed property of the Estate of Louis Dicesare, deceased subject to administration by David M. Roth, Esquire, Administrator d.b.n.c.t.a." By *Order* entered September 25, 2018, the *Motion Of Bryan Dicesare For Emergency Stay Of August 30, 2018 Order Granting Petition To Vacate* filed September 24, 2018, (hereafter, "Emergency Motion"), was denied with prejudice; the [c]ourt finding:

> ... counsel's hope that, within 30 days, an agreement
> can be reached that will allow Dicesare to stay in the
> Property so that its sale will not be necessary, to be
> unfounded. The sale of the Property was ordered by our

- 3 -

May 25, 2018 Order, which Dicesare did not appeal. As indicated in the August 30 Order, the Property cannot be productively marketed while Dicesare and his invitees continue to reside there and nothing in the Emergency Motion convinces us otherwise. Furthermore, both the long procedural history of this case and Dicesare's recently filed IFP petition, which states that he has been unemployed since March 2018, has no current source of income (other than contributions from his wife and mother-in-law) and double-digit credit card and student loan debt, strongly suggest that he is financially unable to purchase the property. The August 30, 2018 Order put an end to Dicesare's consistent pattern of non-cooperation, delay and disregard of [c]ourt Orders by imposing a clear deadline to vacate the property (September 17, 2018) and clearly stating the consequences of failing to do so. (Removal by the Sherrill of Lehigh County). The Emergency Motion fails to persuade us that Dicesare will be in position to buy the Property if given an additional thirty days to reside there.

It was necessary for the Administrator to enlist the assistance of the law enforcement to effectuate the removal of Bryan and his family, first on September 25, 2018, the day after the denial of the Emergency Motion at which time the deputies helped Bryan and his family load tangible personalty into their vehicles. The Administrator d.b.b.c.t.a. then changed the locks to the Property but permitted Bryan, with his then counsel, to return to the Property and remove additional items of tangible personalty. Thereafter, on or about November 13, 2018, without the knowledge or permission of the Administrator d.b.n.c.t.a., Bryan broke into the Property, moved back in with his wife and her mother and changed the locks. Upon discovering that Bryan had reentered and was occupying the Property, the Administrator d.b.n.c.t.a. again effectuated their removal, this time with the assistance with the Salisbury Police Department. The tangible personalty left at the Property by Bryan and his invitees was then marshalled and liquidated by the Administrator d.b.n.c.t.a pursuant to the August 30, 2018 Order. The guns, ammunition and related equipment that were left at Property are currently stored partially at Zettlemoyer Auction Company, (Exhibit F to the Account) and are partially in the custody of the Salisbury Police Department (Exhibit E to the Account).

On January 31, 2019, the Administrator provided notice to Bryan of the auction sale of the Property on February 12, 2019. On February 11, 2019, Bryan and his wife filed Chapter 13 Bankruptcy, assuming that doing so would operate as an automatic stay of the scheduled auction sale of The Property. The Property was sold at auction on February 12, 2019 for $116,000.00. Bryan file a Motion For Contempt And Sanction For Willful Violation of Automatic Stay (hereafter "Emergency Motion") in the Bankruptcy Court on February 25, 2019, thereby causing the Administrator to retain bankruptcy counsel, at additional expense to the estate. By Order dated March 19, 2019, the Bankruptcy Court dismissed the Emergency Motion finding that the automatic stay did not apply and that the Property and its contents were probate assets of Louis DiCesare that could be sold pursuant to this [c]ourt's May 25, 2018 Order. Settlement on the Property occurred on June 20, 2019, and the Administrator d.b.n.c.t.a. filed this final account of his administration in September 2019.

Bryan's contention that the sale of the decedent's real and personal property was improper, which is the basis for all of his objections, is completely erroneous. As is clear from the forgoing summary, the Administrator d.b.n.c.t.a. has, at all times, acted in accordance with the law in general and this [c]ourt's orders in particular, all while exhibiting extraordinary professionalism in the face of the obstructive conduct of Bryan and his wife. It has been the behavior of Bryan and his wife that caused this modest and non-complex estate administration to remain open for eight years and necessitated the appointment of others to fill fiduciary positions because of Bryan's inability or unwillingness to recognize and properly perform those duties.

Because the charge imposed upon Bryan's interest in the Property is more than 20% of the proceeds derived from the sale of the Property, the net proceeds from the sale of the Property are distributable entirely to Linda. As a result of priority claims for guardianship administration expenses and the claim of the Department of Human Services, the Estate of Linda DiCesare is insolvent. Accordingly, and upon consideration of the *Motion* filed June 22, 2021 to File No. 2016-0204A by the Administrator d.b.n. of the Estate of Linda Dicesare, deceased, we shall direct that: the outstanding guardianship administration expenses, totaling $18,838.93, and compensation to the Administrator d.b.n. of the Estate of Linda DiCesare, be paid by the Administrator d.b.n.c.t.a. from the balance in hand. In addition, our Decree will direct that Administrator d.b.n.c.t.a. liquidate the weapons, ammunition and

related equipment listed on Exhibits E and F, preferably by bulk sale to an authorized firearms dealer or collector and shall direct the Salisbury Police Department to release the handguns, rifles and knife that are described on Exhibit E to the Account, to the Administrator d.b.n.c.t.a. or such person/entity as he shall direct. Proceeds derived from the liquidation of the tangible personalty shall be used to pay the storage costs of the weapons and/or additional legal fees and administration expenses incurred by the Administrator d.b.n.c.t.a. since the filing of the account, to the extent that the Reserve stated in the Account is insufficient to do so. Finally, any remaining balance shall be paid to the Department of Human Services as payment in full of the Department of Human Services' claim against the Estate of Linda DiCesare, deceased.

___

[1] *See* Statement of Legal Services for Helen Z. Stauffer, Esquire in the amount of $6,825.00, Steven A. Litz, Esquire in the amount of $3,343.93 and Shannon Piergallini Smith, Esquire in the amount of $8,670.00.

[2] Linda, surviving spouse of the decedent, was the specific devisee of an 80% interest in the Property. Prior to her death on June 21, 2018, Linda had been adjudicated incapicated by Decree entered May 24, 2016 upon the § 5511 petition filed by the residential care facility in which she resided. (See, *Order* entered October 3, 2017 at n. 1). The guardianship administration was not a smooth one due to the conduct of [Appellant] and his girlfriend then-wife (See, *Order* entered October 3, 2017 at n. I, Order entered April 5, 2018 at n. ii) which, among other things, resulted in legal fees and guardianship administration fees that have not yet been paid due to insufficient assets.

[3] The property, consisting mostly of firearms and ammunition which are presently held by Salisbury Township Police and Zettlemoyer Auction, was left in the decedent's home after Bryan and his family were escorted from the home on November 13, 2018, subsequent to their breaking and entering the Property.

[4] See *Orders* entered: September 20, 2017, May 25, 2018, August 30, 2018; *Order* entered October 3, 2017 at n. 1, and *Order* entered April 5, 2018 to File No. 2016-0204 (In re: Linda DiCesare an incapacitated person) and, Order entered on May 6, 2019, to File No 2016-0204A (in re: Linda DiCesare, deceased).

[5] Order entered September 20, 2017 in File No 2013-0751 (removal as Executor of the estate of Louis DiCesare); *Order* entered October 3, 2017 in File No 2016-0204 (removal as Successor Guardian of the Person of Linda DiCesare, an incapacitated person); and *Order* entered May 6, 2019 in File No 2016-0204A (removal as Administrator of the Estate of Linda DiCesare, deceased).

[6] See, *Order* entered May 25, 2018 at n.6, and Order entered August 30, 2018 at n.2

[7] See, *Order* entered May 25, 2018 at p. 5: Bryan Dicesare's 20% interest in the net proceeds from the sale of the Property is charged with $ 35,056.28 representing the aggregate amount of a lump sum payment paid in March 2016 ($26,699.00) as well as monthly payments paid during the period March 2, 2016 through January 3, 2017 s of [sic] ... Bethlehem Steel widow's pension benefits due to Linda Dicesare that Bryan Dicesare received but did not timely report to the medical assistance[8] office or to the subsequently appointed Guardian of the Estate of Linda Dicesare and for which he has failed to account. Said $35,035.25 shall be added to the distributive share of Linda Dicesare, an incapacitated person.

[8] The estate holds a reserve in the amount of $15,000.00 for attorney's fees.

Orphans' Court Adjudication, filed 10/5/21, at 1-7.

On November 2, 2021, Appellant filed a timely notice of appeal. The orphans' court did not order Appellant to file a concise statement of the matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant did not file a concise statement. The orphans' court filed its Pa.R.A.P. 1925(a) Statement on November 5, 2021.

While on page two of his appellate brief Appellant indicates a statement of the questions involved may be found on page eight, no such statement exists. To the extent the captions within the "Argument" portion of Appellant's

brief may be interpreted as questions presented for appellate review, they are as follows:

> 1. Did the lower court have jurisdiction after adopting and approving the May 1, 2017, settlement agreement (stipulation) which became a final order[?]
>
> 2. Did the lower court have authority to decide title of personal property of a third party that has no connection with the estate of Louis Dicesare (file No, 2013-0751)[?]
>
> 3. Did the lower court violate the 2nd Amendment rights of Appellant the right to keep and Bear Arms[?]
>
> 4. Did the lower court error by not dismissing the March 13, 2018, petition for being barred by the doctrine of estoppel and res judicata[?]

Brief for Appellant at 3-4.

At the outset, we recognize it is axiomatic that "appellate briefs and reproduced records must materially conform to the requirements of the Pennsylvania Rules of Appellate Procedure. This Court may quash or dismiss an appeal if the appellant fails to conform to the requirements set forth in the Pennsylvania Rules of Appellate Procedure." ***Commonwealth v. Adams***, 882 A.2d 496, 497 (Pa.Super. 2005) (citation omitted).

Our Pennsylvania Rules of Appellate Procedure and our case law lay out the well-established requirements for preserving a claim for appellate review. This Court will address only those issues properly presented and developed in an appellant's brief as required by our rules of appellate procedure, Pa.R.A.P. 2101–2119. "Appellate arguments which fail to adhere to these rules may be

- 8 -

considered waived, and arguments which are not appropriately developed are waived." *Karn v. Quick & Reilly Inc*, 912 A.2d 329, 336 (Pa.Super. 2006). *See also* Pa.R.A.P. 2111–2119 (discussing required content of appellate briefs and addressing specific requirements of each subsection of brief on appeal). Thus, issues which are not developed in the brief's argument section will be deemed waived. *Harkins v. Calumet Realty Co.*, 614 A.2d 699, 703 (Pa.Super. 1992).

To properly develop an issue for our review, an appellant bears the burden of ensuring that the argument section of his or her brief includes citations to pertinent authorities as well as a discussion and analysis of that relevant legal authority. *See* Pa.R.A.P. 2119(a); *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa.Super. 2007) ("[I]t is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities." (citations omitted)). Where an appellant's argument rests on evidence in the record, he must make appropriate references to the record in his argument. *Commonwealth v. Franklin*, 823 A.2d 906, 910 (Pa. Super. 2003).

"Although this Court is willing to construe liberally materials filed by a *pro se* litigant, *pro se* status generally confers no special benefit upon an appellant." *Commonwealth v. Lyons*, 833 A.2d 245, 251–252 (Pa.Super. 2003). For this reason, an individual who chooses to represent himself in a

legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing. **Adams supra** at 498; **Commonwealth v. Rivera**, 685 A.2d 1011 (Pa.Super. 1996).

Accordingly, Appellant's *pro se* status herein does not relieve him of the obligation to follow the Rules of Appellate Procedure. **Jiricko v. Geico Ins. Co.**, 947 A.2d 206, 213 n.11 (Pa. Super. 2008).  As this Court has made clear, we "will not act as counsel and will not develop arguments on behalf of an appellant." **Hardy**, **supra** at 771.  Where defects in a brief "impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived." **Id.**

Our review of Appellant's *pro se* brief exposes substantial violations of the briefing requirements set forth in Pa.R.A.P. 2111–2119.  First, as previously stated, Appellant failed to set forth a clear statement of questions involved. **See** Pa.R.A.P. 2111(6)(a) (stating "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").

In addition, "[t]he Rules of Appellate Procedure state  unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority.  Failure to do so constitutes waiver of the claim." **Giant Food Stores, LLC v. THF Silver Spring Dev., L.P.,** 959 A.2d 438, 444 (Pa.Super.2008) (citations omitted); Pa.R.A.P. 2119(a) and (b).  The disjointed and at times unintelligible "Argument" portion of Appellant's brief

fails to conform his purported arguments to specific questions raised for appellate review in violation of Pa.R.A.P. 2119(a). His narrative is punctuated with definitions of terms, citations to statutes and caselaw which are not germane to the instant appeal, like *res judicata* and subject matter jurisdiction. Brief for Appellant at 12-28. Furthermore, Appellant often engages in fatuous speculation and fails to deliver a cogent legal analysis.

Furthermore, although Appellant's brief contains a section labeled "Statement of the Case," this section does not include a statement of the form of action; a brief procedural history relevant to the within appeal from the October 5, 2021, Decree; the name of the judge whose determination Appellant seeks to have reviewed; or a condensed chronological statement of the facts necessary to review the determination, as required by Pa.R.A.P. 2117. ***See*** Pa.R.A.P. 2117. Instead, Appellant's "Statement of the Case" begins as a summary of his personal life and time spent caring for his parents and continues with references to determinations in prior legal proceedings with which he disagrees.

For example, Appellant maintains "[o]n May 24, 2016, Linda DiCesare was declared incompetent, which was a direct violation of her ***Constitutional Right to be Heard***." Brief for Appellant at 15 (emphasis in original). He also asserts "**42 Pa.C.S. § 5505** prevents the Orphans' Court from having Jurisdiction to modify or revoke the May 1, 2017, Stipulation/Order more than 30 days after its entry, including the Order entered May 25, 2018." ***Id***. at 19.

(emphasis in original). Finally, he asks this Court to "void the Orders of the lower court from June 1, 2017, to present." *Id*. at 43.

Moreover, Appellant's argument fails to conform to Pa.R.A.P. 2119(b), (c), in that it contains allegations of the orphan's court's denial of numerous constitutional rights of his and of other individuals that are not dispositive herein. For instance, he references the personal property of a nurse, Arlene Prohaska, which allegedly had been taken from the Paxford Road home in violation of her due process rights under the Second, Fourth, and Fourteenth Amendments to the United States Constitution. Brief or Appellant at 26, 32. Appellant also focuses on alleged violations of his Second Amendment rights under the Constitution. Brief for Appellant at 34-35. In addition, he states that when Linda DiCesare was declared incompetent on May 24, 2016, her "Constitutional Right to be Heard" was violated. *Id*. at 15.

In light of the foregoing, Appellant has failed to comply in substantial respects with the Rules of Appellate Procedure. Because of these considerable defects, we are unable to perform effective appellate review, and we quash Appellant's appeal for failure to comply with our Rules of Appellate Procedure.

Appeal quashed.[1]

---

[1] On June 6, 2022, Appellant filed his "Motion to Dismiss Orders for Lack of Subject Matter Jurisdiction and Fraud Upon the Lower Court." Therein, Appellant asks this Court to dismiss the orphans' court Orders entered on May 24, 2018, pertaining to the sale of the Paxford Road property, and August 29, 2018, which imposed a clear deadline by which Appellant and his family were
*(Footnote Continued Next Page)*

- 12 -

J-S19034-22

President Judge Panella joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/11/2022

---

to vacate the property.  Appellant alleges in his Motion that the orphans' court lacked jurisdiction to enter the Orders.  However, these Orders are not before this Court herein, as the instant estate administration appeal is from the Order entered on October 5, 2021.  Moreover, Appellant failed to file a timely appeal from the May 25, 2018, Order, and his Emergency Motion to stay the August 29, 2018, Order was denied. Thus, he has waived any claim pertaining to these Orders. **See** Pa.R.A.P. 903(a) (requiring the filing of a notice of appeal within 30 days after the entry of the order from which the appeal is taken); **Porter v. Nikita Lodging, Inc.**, ___ A.3d 2022___, PA Super 78, *8-9 (filed May 2, 2022) (concluding that the failure to timely appeal from an order results in waiver of any issues related to that order, as this Court lacks jurisdiction to consider such issues). As such, we quash Appellant's June 6, 2022, Motion.

- 13 -